513 S.E.2d 676

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Zenie Junior MYERS, III, Defendant Below, Appellant.**

No. 25004.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 23, 1998.

Decided Nov. 20, 1998.

**454**

David Nibert, R. Michael Shaw, Point Pleasant, West Virginia, Attorneys for Appellant.

Darrell V. McGraw, Jr., Attorney General, Rory L. Perry, II, Assistant Attorney General, Charleston, West Virginia, Attorneys for Appellee.

DAVIS, Chief Justice:

Zenie Junior Myers, III, defendant/appellant (hereinafter "Mr. Myers"), appeals from orders convicting him of and sentencing him for the crime of first degree murder. Mr. Myers entered a plea of guilty to the charge of murder in the first degree. He was sen-tenced to life in prison without the possibility of parole. Mr. Myers now seeks to withdraw his plea of guilty on three grounds. First, Mr. Myers argues that the State violated terms of the plea agreement. Second, Mr. Myers argues he did not voluntarily enter the guilty plea. Finally, Mr. Myers argues that his sentence should be set aside because the trial court failed to set out in its sentencing order adequate findings to support its denial of his request for a sentence of life in prison with mercy. We agree with Mr. Myers that the State violated terms of the plea agreement. On that basis alone, we reverse and remand this case for disposition as outlined in this opinion.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On August 25, 1995, Mr. Myers broke into the residence of his grandfather, Zenie Elmer Myers. He shot his grandfather in the abdomen with a 12–gauge shotgun, killing him. Proceeding then to the home of his mother and stepfather, Mr. Myers twice shot at his stepfather, but missed both times. Thereafter, he left the residence and hid from the police. Mr. Myers surrendered the following day. A Mason County grand jury returned a five count indictment against Mr. Myers, charging him with murder in the first degree, attempted murder, wanton endangerment, burglary, and petit larceny.

Mr. Myers underwent a battery of psychiatric and psychological evaluations pending his prosecution. Although, Mr. Myers initially argued he was incompetent to stand trial, he later withdrew the objection when his own experts determined that he was competent to stand trial. Based upon the results obtained from the series of psychological evaluations of Mr. Myers, the circuit court ultimately determined he was competent to stand trial. Having been unsuccessful in his attempt to avoid trial, Mr. Myers entered a plea agreement with the State. On September 27, 1996, he agreed to plead guilty to first degree murder in exchange for three specific promises by the State. First, the State promised to dismiss the remaining charges against him. Second, the State agreed to remain silent during the sentenc-

ing hearing on the issue of whether Mr. Myers should receive a sentence of life in prison with or without mercy. Finally, the State agreed to remain silent during the sentencing hearing on the issue of Mr. Myers' use of a firearm in the commission of a crime.

The plea agreement was executed and submitted to the trial court on September 27, 1996. The trial court conducted a hearing on the plea agreement and determined, after extensive questioning of Mr. Myers and his counsel, that Mr. Myers voluntarily and knowingly entered into the plea agreement. During the hearing, the trial court accepted Mr. Myers' plea of guilty to the charge of first degree murder. Shortly thereafter, Mr. Myers filed a motion to withdraw his guilty plea. On October 7, 1996, the trial court conducted a hearing on Mr. Myers' motion to withdraw the guilty plea. At the conclusion of the hearing, the trial court denied the motion and ruled that Mr. Myers did not present any legal basis for the withdrawal of the guilty plea.

A sentencing hearing was held on May 3, 1997. During the sentencing hearing, the prosecutor asserted that Mr. Myers should be sentenced to life in prison without the possibility of parole and that the crime was committed with the use of a firearm. Both statements by the prosecutor were inconsistent with the plea agreement.[1] Unfortunately, no objection to the statements made by the prosecutor was made by Mr. Myers' defense counsel. The trial court subsequently sentenced Mr. Myers to life in prison without the possibility of parole. Mr. Myers then filed a motion for reconsideration of his sentence. During the reconsideration hearing, Mr. Myers and his counsel again failed to inform the trial court that the State had violated the terms of the plea agreement during the sentencing hearing. Instead, Mr. Myers argued that he did not voluntarily enter into the plea agreement. Ultimately, the trial court denied Mr. Myers' motion for reconsideration.

## II.

## STANDARD OF REVIEW

■ The standard of review for issues involving the breach of a plea agreement is set fourth in syllabus point 1 of *State ex rel. Brewer v. Starcher*, 195 W.Va. 185, 465 S.E.2d 185 (1995). In *Brewer*, this Court held:

Cases involving plea agreements allegedly breached by either the prosecution or the circuit court present two separate issues for appellate consideration: one factual and the other legal. First, the factual findings that undergird a circuit court's ultimate determination are reviewed only for clear error. These are the factual questions as to what the terms of the agreement were and what was the conduct of the defendant, prosecution, and the circuit court. If disputed, the factual questions are to be resolved initially by the circuit court, and these factual determinations are reviewed under the clearly erroneous standard. Second, in contrast, the circuit court's articulation and application of legal principles is scrutinized under a less deferential standard. It is a legal question whether specific conduct complained about breached the plea agreement. Therefore, whether the disputed conduct constitutes a breach is a question of law that is reviewed de novo.

Clearly, when the facts are not in dispute, the question of whether the State's conduct breached the terms of a plea agreement is a question of law that we review de novo. *See State v. Wills*, 193 Wis.2d 273, 533 N.W.2d 165 (1995).

## III.

## DISCUSSION

### A. Violation Of The Plea Agreement Is Reviewable By This Court

Mr. Myers argues that he should be allowed to withdraw his plea of guilty as the

---

1. The record indicates that the prosecutor at the sentencing hearing was not the prosecutor who signed the plea agreement. This fact, however, is immaterial. "The staff lawyers in a prosecutor's office have the burden of 'letting the left hand know what the right hand is doing' or has done." *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971). *Accord State ex rel. Gray v. McClure*, 161 W.Va. 488, 242 S.E.2d 704 (1978). Likewise, any change in the duly elected prosecutor does not affect the standard of responsibility for the office.

State violated the terms of the plea agreement. The State asserts that Mr. Myers never presented the issue to the trial court. This Court has held that "[w]here objections were not shown to have been made in the trial court, and matters concerned were not jurisdictional in character, such objections will not be considered on appeal." Syl. pt. 1, *State Road Commission v. Ferguson,* 148 W.Va. 742, 137 S.E.2d 206 (1964). The State urges this Court to refuse to consider the violation of the plea agreement on appeal, in view of our general raise or waive rule.

Additionally, the State has cited a number of federal cases indicating that the majority of federal courts do not permit a defendant to assert for the first time on direct appeal a violation of a plea agreement. *See United States v. Wyatt,* 26 F.3d 863 (8th Cir.1994); *United States v. D'Iguillont,* 979 F.2d 612 (7th Cir.1992); *United States v. Navejar,* 963 F.2d 732 (5th Cir.1992); *United States v. Flores–Payon,* 942 F.2d 556 (9th Cir.1991); *United States v. Jefferies,* 908 F.2d 1520 (11th Cir.1990). A minority of federal courts will permit an alleged violation of a plea agreement to be presented for the first time on direct appeal. *See United States v. Hand,* 913 F.2d 854 (10th Cir.1990); *United States v. Moscahlaidis,* 868 F.2d 1357 (3d Cir.1989); *United States v. Brody,* 808 F.2d 944 (2d Cir.1986). Notwithstanding the federal court's analysis, we are unpersuaded by the federal court's majority view and the State's arguments because of the particularly horrendous conduct in this case.

 Due to the egregious nature of the prosecutors violations of the plea agreement in this case, this Court is compelled to resort to the plain error doctrine to examine the violations. The State contends that we should not apply the plain error rule because Mr. Myers has not asserted plain error on appeal. However, this Court's application of the plain error rule in a criminal prosecution is not dependent upon a defendant asking the Court to invoke the rule. "[W]e may, sua sponte, in the interest of justice, notice plain error[.]"[2] *State v. Hutchinson,* 176 W.Va. 172, 177, 342 S.E.2d 138, 142 (1986). *See State v. Salmons,* 203 W.Va. 561, 571 n. 13, 509 S.E.2d 842, 852 n. 13 (1998). Nevertheless, this Court will not routinely apply, sua sponte or at the request of a defendant, the plain error rule. "[T]he doctrine is to be used sparingly and only in those circumstances where substantial rights are affected, or the truth-finding process is substantially impaired, or a miscarriage of justice would otherwise result." Syl. pt. 4, in part, *State v. England,* 180 W.Va. 342, 376 S.E.2d 548 (1988). Additionally, "[t]he plain error rule presupposes that the record is sufficiently developed to discern the error." *State v. Spence,* 182 W.Va. 472, 481, 388 S.E.2d 498, 507 (1989). The record in the case at hand is sufficiently developed on the issue of the plea agreement violation. Therefore, based upon the foregoing, we will review this case by using the plain error analysis.

### B. Plain Error Analysis

 Plain error analysis involves a four-pronged test. "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. pt. 7, *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995).[3]

2. The plain error doctrine is found in W.Va. R.Crim.P. Rules 30 and 52(b). Rule 30 specifically states that plain error may be noticed sua sponte by this Court. Rule 52(b) does not contain such an express statement. However, our cases have consistently held that "[t]he [provisions of the] plain error doctrines contained in Rule 30 and Rule 52(b) ... [are] identical. It enables this Court to take notice of error ... even though such error was not brought to the attention of the trial court." Syl. pt. 4, in part, *State v. England,* 180 W.Va. 342, 376 S.E.2d 548 (1988). *See State ex rel. Morgan v. Trent,* 195 W.Va. 257, 261 n. 5, 465 S.E.2d 257, 261 n. 5 (1995); Syl. pt. 6, *State v. Mayo,* 191 W.Va. 79, 443 S.E.2d 236 (1994); Syl. pt. 1, *State v. Hanson,* 181 W.Va. 353, 382 S.E.2d 547 (1989); *State v. Spence,* 182 W.Va. 472, 481 n. 10, 388 S.E.2d 498, 507 n. 10 (1989).

3. The formulation of the plain error standard set forth in *Miller* was adopted from *United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Prior to adopting the *Olano* formulation, our cases basically employed the first three elements of the *Miller* test. *Olano* provided our case law on plain error with a new fourth element, *i.e.,* considerations of fairness, integrity, and public reputation.

We will now proceed to independently analyze each element of the plain error test.

■ **1. Determining error.** Under *Miller*, our initial inquiry is to determine whether there has been an error. The analysis of whether an "error" has occurred under the plain error doctrine in the context of a plea agreement necessarily involves two determinations: (1) whether there existed in a plea agreement an enforceable right which benefited the defendant,[4] and (2) whether the defendant[5] waived or forfeited the benefits of such a right. We consider these criteria in turn.

■ Our analysis of whether a right that inured to the benefit of Mr. Myers existed in the plea agreement, begins "with the observation that there is no absolute right under either the West Virginia or the United States Constitution to plea bargain. To this end, we have noted that a defendant has 'no constitutional right to have his case disposed of by way of a plea bargain[.]' " *Brewer. v. Starcher*, 195 W.Va. 185, 192, 465 S.E.2d 185, 192 (quoting *Myers v. Frazier*, 173 W.Va. 658, 664 n. 5, 319 S.E.2d 782, 788 n. 5 (1984)).[6] *See Moody v. State*, 716 So.2d 562 (Miss.1998); *Roeder v. State*, 696 N.E.2d 62 (Ind.App.1998); *State v. Lee*, 191 Ariz. 542,

959 P.2d 799 (1998). In fact, "[a] plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest." *Mabry v. Johnson*, 467 U.S. 504, 507, 104 S.Ct. 2543, 2546, 81 L.Ed.2d 437 (1984). While it is clear that no right exists requiring the State to enter a plea agreement with a defendant, once a plea agreement has been entered into and approved by the court, the situation drastically changes. A defendant has a constitutional right to the enforcement of a plea agreement that has passed the executory threshold. "Due process concerns arise in the process of enforcing a plea agreement." *State v. Smith*, 207 Wis.2d 258, 558 N.W.2d 379, 385 (1997).

■ To determine the nature of the defendant's enforceable rights under a plea agreement that has passed the executory threshold, we look to contract law. "As a matter of criminal jurisprudence, a plea agreement is subject to principles of contract law insofar as its application insures a defendant receives that to which he is reasonably entitled." *Brewer*, 195 W.Va. at 192, 465 S.E.2d at 192. *See also Myers*, 173 W.Va. at 672 n. 21, 319 S.E.2d at 796 n. 21 ("As

---

4. If no enforceable right is found the analysis terminates. Our decision in *State v. Jarvis*, 172 W.Va. 706, 310 S.E.2d 467 (1983), provides an example. In *Jarvis*, the defendant complained that the State breached a plea agreement by failing to recommend probation. The State's position was that the plea agreement required the defendant to assist the State with other investigations in exchange for its probation recommendation. The State argued that the defendant did not assist it with other investigations, therefore, it was not required to abide by the plea agreement. Without any discussion or analysis, we ruled in *Jarvis* that, in effect, the probation aspect of the plea agreement did not provide the defendant with an enforceable right because he did not uphold his part of the agreement. *See also, United States v. Mahique*, 150 F.3d 1330 (11th Cir.1998) (defendant breached agreement); *United States v. Newman*, 148 F.3d 871 (7th Cir.1998) *United States v. Martinez*, 143 F.3d 1266 (9th Cir.1998); *United States v. Delacruz*, 144 F.3d 492 (7th Cir.1998); *Gonzalez v. State*, 714 So.2d 1125 (Fla.App. 3 Dist.1998); *Berg v. State*, 131 Idaho 517, 960 P.2d 738 (1998).

5. If it is found that the defendant waived his/her right, the analysis terminates.

6. Even where the State and defendant have reached a plea agreement, the trial court has discretion to reject the agreement. *See* W.Va. R.Crim.P.Rule 11(e)(4). We observed in *State v. Lewis*, 191 W.Va. 635, 637, 447 S.E.2d 570, 572 (1994), that "[a] primary test to determine whether a plea bargain should be accepted or rejected is in light of the entire criminal event and given the defendant's prior criminal record whether the plea bargain enables the court to dispose of the case in a manner commensurate with the seriousness of the criminal charges and the character and background of the defendant." *See* Syl. pt. 6, *Myers v. Frazier*, 173 W.Va. 658, 319 S.E.2d 782 (1984); Syl. pt. 6, *State v. Hays*, 185 W.Va. 664, 408 S.E.2d 614 (1991).

We should also emphasize that under W.Va. R.Crim.P.Rule 11 there are two types of plea agreements: binding and nonbinding. In the instant case, the agreement was nonbinding on the trial court. Therefore, even if the state had not breached the plea agreement, the trial court had discretion to sentence the defendant to life without mercy.

between the prosecutor and the defendant, the plea bargaining process has overtones of contract law and on occasion we, along with other courts, have utilized contractual terminology in discussing the enforceability of a plea agreement against a prosecutor"). *See also United States v. Martinez,* 143 F.3d 1266 (9th Cir.1998) (plea agreement in nature of contract); *United States v. Moulder,* 141 F.3d 568 (5th Cir.1998); *State v. Pennington,* 154 N.J. 344, 712 A.2d 1133 (1998).[7] Moreover, plea agreements normally arise in the form of unilateral contracts. In this regard, the consideration given for the State's promise is not the defendant's corresponding promise to plead guilty. Rather, it is the defendant's actual performance by so pleading. *See State v. Wall,* 348 N.C. 671, 502 S.E.2d 585 (1998). That is, a defendant's right to have the State perform its promise in a plea bargaining agreement does not inure to a defendant until he or she has pled guilty or performed part of the plea agreement to his or her detriment in reliance upon the agreement. *See Matter of Robinson,* 180 Mich.App. 454, 447 N.W.2d 765 (1989).

■ Similarly, a fundamental principle of our criminal law is that a plea " 'agreement between a prosecuting attorney and an accused, approved by the court, should be upheld ordinarily when the accused has fulfilled his part of the agreement.' " Syl., *State ex rel. Rogers v. Steptoe,* 177 W.Va. 6, 350 S.E.2d 7 (1986), (quoting Syl., *State v. Ward,* 112 W.Va. 552, 165 S.E. 803 (1932)). *See State v. Hodges,* 172 W.Va. 322, 325, 305 S.E.2d 278, 282 (1983); *Brooks v. Narick,* 161 W.Va. 415, 416, 243 S.E.2d 841, 842 (1978); *State v. Wayne,* 162 W.Va. 41, 42, 245 S.E.2d 838, 840 (1978). A plea agreement presup-

poses fundamental fairness in the process of securing such an agreement between a defendant and the State. *See State v. Schaff,* 958 P.2d 682 (Mont.1998). Plea agreements are a form of contracts, their unique nature requires ordinary contract principles to be supplemented with a concern that the bargaining and execution process does not violate the defendant's right to fundamental fairness under the due process clause. *See United States v. Schilling,* 142 F.3d 388 (7th Cir.1998). Plea bargaining is to be conducted fairly on both sides, with the results not frustrating the reasonable expectations of either the defendant or the State. *See McClellan v. State,* 967 S.W.2d 706 (Mo.App.1998).

■ Related to these due process concerns is the scrupulous standard applicable to prosecutors and courts throughout the acceptance and implementation of the plea agreement. The United States Supreme Court has also addressed this issue in *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971), where the court held that "when a plea rests in any significant degree on a promise or agreement ... so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." [8] Similarly, Justice Cleckley, writing the unanimous opinion for this Court in *Brewer,* held that "[b]ecause a plea agreement requires a defendant to waive fundamental rights, we are compelled to hold prosecutors and courts to the most meticulous standards of both promise and performance." 195 W.Va. at 192, 465 S.E.2d at 192. Furthermore, in *State ex rel. Gray v. McClure,* 161 W.Va. 488, 491, 242 S.E.2d 704, 706 (1978) we noted that "[p]ermitting the

---

**7.** Traditional principles of contract law are not strictly applicable to plea agreements. Rather, contract principles are generally invoked to hold the government to its obligations under a plea agreement so that defendant will not suffer prejudice as result of his or her reliance on it. *See United States v. Asset,* 990 F.2d 208 (5th Cir. 1993).

**8.** The underlying facts of *Santobello* are consistent with the underlying facts of the instant case. In *Santobello,* the defendant agreed to plead guilty to second degree possession of gambling records, if the prosecution would agree to make no recommendation as to the defendant's sentence. Between the time the defendant pled

guilty and the sentencing hearing, another prosecutor replaced the prosecutor who had negotiated the plea. At the sentencing hearing, the new prosecutor recommended that the defendant receive the maximum sentence because of his criminal record and his alleged links with organized crime. Although defense counsel objected on the grounds that the prosecution breached the plea agreement, the trial court imposed the maximum sentence. On appeal, the United States Supreme Court vacated the judgment and remanded the case to the state court to determine whether the defendant should be resentenced or allowed to withdraw his plea.

prosecution to breach a plea bargaining agreement has been characterized as 'extremely detrimental to the administration of justice if it should be established'" (quoting, *People v. Siciliano,* 185 Misc. 149, 152, 56 N.Y.S.2d 80, 82 (1945)). Such a "[a] breach of a plea agreement may occur where the State, after having agreed to remain neutral to the sentence to be imposed, fails to do so." *Duncil v. Kaufman,* 183 W.Va. 175, 394 S.E.2d 870 (1990) Syl. pt. 8. *Accord United States v. Brye,* 146 F.3d 1207 (10th Cir.1998). If the State fails to uphold its commitment under a plea agreement by breaching a promise upon which a guilty plea is based, the resulting conviction simply cannot stand. *See Zebroski v. State,* 715 A.2d 75 (Del. Supr.1998); *State v. Garcia,* 582 N.W.2d 879 (Minn.1998). Finally, this Court observed in *Myers,* 173 W.Va. at 672, 319 S.E.2d at 796–797 that "[i]f the defendant materially violates a condition of his plea agreement, courts have uniformly permitted the plea bargain to be set aside by the prosecutor, who may then pursue the charges previously covered by the plea agreement." *Citing United States v. Nathan,* 476 F.2d 456 (2d Cir.1973); *United States v. Simmons,* 537 F.2d 1260 (4th Cir.1976); *United States v. Donahey,* 529 F.2d 831 (5th Cir.1976); *United States v. Calabrese,* 645 F.2d 1379 (10th Cir.1981).

▮▮▮▮ Under the above cited authorities, when a defendant enters into a valid plea agreement with the State that is accepted by the trial court, an enforceable "right" inures to both the State and the defendant not to have the terms of the plea agreement breached by either party. In the case sub judice, Mr. Myers entered into a valid plea agreement with the State that was accepted by the trial court. The terms of the agreement required Mr. Myers to plead guilty to first degree murder. In exchange for Mr. Myers' promise to enter such a plea, the

State promised to drop the remaining charges, remain silent on the issue of mercy and remain silent on the use of a weapon in the commission of the crime. Under our analysis, the "right" which inured to the State was that of having Mr. Myers plead guilty to first degree murder. The State's right was enforceable once the State fulfilled its end of the agreement. *See United States v. Atterberry,* 144 F.3d 1299 (10th Cir.1998).

▮▮▮▮ While it is true that under certain conditions a defendant may withdraw his/her plea before sentencing, "'it remains clear that a defendant has no absolute right to withdraw a guilty plea before sentencing.'" *Duncil,* 183 W.Va. at 178, 394 S.E.2d at 873 (*quoting United States v. Boone,* 869 F.2d 1089, 1091 (8th Cir.), *cert. denied,* 493 U.S. 822, 110 S.Ct. 81, 107 L.Ed.2d 47 (1989)) .[9] "Were withdrawal automatic in every case where the defendant decided to alter his tactics and present his theory of the case to the jury, the guilty plea would become a mere gesture, a temporary and meaningless formality reversible at the defendant's whim." *United States v. Hyde,* 520 U.S. 670, 677, 117 S.Ct. 1630, 1634, 137 L.Ed.2d 935 (1997).

Counterwise, the "right" which inured to Mr. Myers was that of having the State drop the remaining charges against him, and, during the sentencing hearing, remain silent on the issue of mercy and the use of a weapon in the commission of the crime. Mr. Myers' right was enforceable, once he fulfilled his part of the bargain.[10] *See Gray,* 161 W.Va. at 492, 242 S.E.2d at 707 ("The rule we follow ... is that a prosecuting attorney ... is bound to the terms of a plea agreement once the defendant enters a plea of guilty or otherwise acts to his substantial detriment in reliance thereon."). The record is quite clear. Mr. Myers fulfilled his part of the agreement with the State and entered a plea of guilty to first degree murder. The record

---

**9.** "Rule 32(d) of the West Virginia Rules of Criminal Procedure as it relates to the right to withdraw a guilty or nolo contendere plea prior to sentence permits the withdrawal of a plea for 'any fair and just reason.'" Syl. pt. 1, *State v. Harlow,* 176 W.Va. 559, 346 S.E.2d 350 (1986).

**10.** "'[I]f the defendant chooses to disregard the agreement ... the State should not be held to the bargain and, at its option, may ... reinstitute any charges dismissed pursuant to the plea bargain and proceed to trial thereon.'" *State ex rel. Phillips v. Boggess,* 187 W.Va. 153, 155, 416 S.E.2d 270, 272 (1992), (quoting, *Blackburn v. State,* 170 W.Va. 96, 290 S.E.2d 22 (1982)).

is equally clear in establishing that the State did not fulfill two critical terms of its promise to Mr. Myers: the State did not remain silent on the issue of mercy or with regard.to the use of a weapon. These violations of the plea agreement by the State represent rights enforceable by Mr. Myers. "Although a defendant has no right to call upon the prosecution to perform while the agreement is wholly executory, once the defendant has given up his bargaining chip by pleading guilty, due process requires that the defendant's expectations be fulfilled." Daniel Frome Kaplan, *Where Promises End: Prosecutorial Adherence to Sentence Recommendation Commitments in Plea Bargains,* 52 U. Chi. L.Rev. 751, 755 (1985).

 Having established that an enforceable "right" was created that inured to Mr. Myers as a result of the plea agreement, we must now determine whether Mr. Myers waived or forfeited that right when the State breached the terms of the plea agreement. This Court has previously articulated the distinction between the "waiver" and the "forfeiture" of a right. We have indicated that "[w]aiver ... is the 'intentional relinquishment or abandonment of a known right.' " *Miller,* 194 W.Va. at 18, 459 S.E.2d at 129 (*quoting, United States v. Olano,* 507 U.S. 725, 733, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993), *quoting Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). "[W]hen there has been such a knowing waiver, there is no error and the inquiry as to the effect of the deviation from a rule of law [or violation of a right] need not be determined." *Miller,* 194 W.Va. at 18, 459 S.E.2d at 129 (*citing United States v. Lakich,* 23 F.3d 1203, 1207 (7th Cir.1994)). *Accord* Syl. pt. 6, *State v. Crabtree,* 198 W.Va. 620, 482 S.E.2d 605 (1996). In other words, "[w]hen a right is waived, it is not reviewable even for plain error. By contrast, the simple failure to assert a right by not objecting—forfeiture—is distinct from an intentional relinquishment—waiver. Only a forfeiture is reviewable under plain error." *Crabtree,* 198 W.Va. at 631, 482 S.E.2d at 616 (*Citing United States v. David,* 83 F.3d 638, 641 n. 5 (4th Cir.1996)). "[M]ere forfeiture of a right—the failure to make timely assertion of the right—does not extinguish the error." *Miller,* 194 W.Va. at 18, 459 S.E.2d at 129.

In the context of a plain error analysis, this Court has not previously articulated precisely what type of showing must be made by the State to establish that a defendant has waived a right arising from a plea agreement right. We do so now.

 In order to establish that there has been a known waiver of a plea agreement right by a defendant, the State has the burden of showing such a waiver. To carry this burden, the State must show more than the mere fact that a defendant remained silent at the time the plea agreement right was violated by the State, or that the defendant failed to raise the violation in a post-verdict motion. To meet its burden, the State must point to some affirmative evidence in the record which establishes beyond a reasonable doubt that a defendant intentionally relinquished or abandoned a plea agreement right. Examples of how the State may meet this burden include, but are not necessarily limited to, demonstrating on the record: (1) that a document was signed by the defendant and his/her counsel waiving a plea agreement right, or (2) that the defendant or his/her counsel stated in open court that a previous plea agreement right had been relinquished or abandoned.

 In the instant proceeding, the State attempted to establish that Mr. Myers waived his plea agreement right by showing that Mr. Myers failed to object during the sentencing hearing when the plea violations occurred, and further failed to raise the issue in a post-verdict motion. This evidence does not satisfy the State's burden of establishing waiver. Nevertheless, such evidence demonstrates that Mr. Myers forfeited his plea agreement right. However, forfeiture does not nullify the error caused by the State's breach of the plea agreement. "If a [right] was violated during the ... proceedings, and if the defendant did not waive the [right], then there has been an 'error' ... despite the absence of a timely objection." *Olano,* 507 U.S. at 733–734, 113 S.Ct. at 1777. "In such a circumstance, it is necessary to continue the inquiry and to determine whether the

error is 'plain.'" *Miller,* 194 W.Va. at 18, 459 S.E.2d at 129. Therefore, we proceed to the second step of the plain error analysis.

■ **2. Determining whether the error was plain.** The issue we now address is whether the error arising from the State's violation of the plea agreement is plain. Our cases have held that "[t]o be 'plain,' the error must be 'clear' or 'obvious.'" Syl. pt. 3, in part, *State ex rel. Morgan v. Trent,* 195 W.Va. 257, 465 S.E.2d 257 (1995). *See* Syl. pt. 8, in part, *Miller.* Other than to make this important observation, our cases have not elaborated upon the legal dimensions of "plain."

■ Under a plain error analysis, an error may be "plain" in two contexts. First, an error may be plain under existing law, which

means that the plainness of the error is predicated upon legal principles that the litigants and trial court knew or should have known at the time of the prosecution. Second, an error may be plain because of a new legal principle that did not exist at the time of the prosecution, *i.e.,* "the error was unclear at the time of trial; however, it becomes [plain] on appeal because the applicable law has been clarified." [11] *Olano,* 507 U.S. at 734, 113 S.Ct. at 1777.

In the instant proceeding, the issue of the error's plainness is predicated upon legal principles existing at the time the error occurred, *i.e.,* the error is plain under existing law.[12] Prior to the plea agreement violation in the matter sub judice, cases by this Court

11. The United States Supreme Court recently had an opportunity to apply the second definition of "plain" in the context of an error resulting from a legal principle that did not exist at the time of a defendant's conviction in the case of *Johnson v. United States,* 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). In *Johnson,* the defendant was convicted by a jury of a federal perjury charge. At the time of the defendant's trial, federal law required that the trial court, rather than the jury, decide the issue of "materiality," which was an element of the offense. While the defendant's case was pending appeal, the Supreme Court issued an opinion in *United States v. Gaudin,* 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), which held that the issue of "materiality" in a perjury prosecution had to be decided by the jury. The decision in *Johnson* resolved the issue of whether or not new law fulfills the "plain" requirement under plain error analysis as follows:

In the case with which we are faced today, the error is certainly clear under "current law," but it was by no means clear at the time of trial.

The Government contends that for an error to be "plain," it must have been so both at the time of trial and at the time of appellate consideration. In this case, it says, petitioner should have objected to the court's deciding the issue of materiality, even though near-uniform precedent both from this Court and from the Courts of Appeals held that course proper. Petitioner, on the other hand, urges that such a rule would result in counsel's inevitably making a long and virtually useless laundry list of objections to rulings that were plainly supported by existing precedent. We agree with petitioner on this point, and hold that in a case such as this—where the law at the time of trial was settled and clearly contrary to the law at the time of appeal—it is enough that an error be "plain" at the time of appellate consider-

ation. Here, at the time of trial it was settled that the issue of materiality was to be decided by the court, not the jury; by the time of appellate consideration, the law had changed, and it is now settled that materiality is an issue for the jury. The second part of the [plain error] test is therefore satisfied.

*Johnson,* 520 U.S. at 467–68, 117 S.Ct. at 1549.

12. Merely because an error is found to be "plain" as a result of a new principle of law that did not exist at the time of the error, does not abrogate our rules concerning retroactivity of a new rule. *See* Syl. pt. 5, *Bradley v. Appalachian Power Co.,* 163 W.Va. 332, 256 S.E.2d 879 (1979) ("In determining whether to extend full retroactivity, the following factors are to be considered: First, the nature of the substantive issue overruled must be determined. If the issue involves a traditionally settled area of law, such as contracts or property as distinguished from torts, and the new rule was not clearly foreshadowed, then retroactivity is less justified. Second, where the overruled decision deals with procedural law rather than substantive, retroactivity ordinarily will be more readily accorded. Third, common law decisions, when overruled, may result in the overruling decision being given retroactive effect, since the substantive issue usually has a narrower impact and is likely to involve fewer parties. Fourth, where, on the other hand, substantial public issues are involved, arising from statutory or constitutional interpretations that represent a clear departure from prior precedent, prospective application will ordinarily be favored. Fifth, the more radically the new decision departs from previous substantive law, the greater the need for limiting retroactivity. Finally, this Court will also look to the precedent of other courts which have determined the retroactive/prospective question in the same area of the law in their overruling decisions").

462

and other jurisdictions had affirmatively held that a plea agreement validly entered into by the parties and accepted by the court could not be breached unilaterally. *See Myers v. Frazier, supra; State ex rel. Gray v. McClure, supra; State v. Harlow,* 176 W.Va. 559, 346 S.E.2d 350 (1986); *State v. Olish,* 164 W.Va. 712, 266 S.E.2d 134 (1980); *Santobello v. New York, supra; United States v. Mitchell,* 136 F.3d 1192 (8th Cir.1998); *United States v. Ramunno,* 133 F.3d 476 (7th Cir.1998); *United States v. Johnson,* 132 F.3d 628 (11th Cir.1998); *People v. Lopez,* 66 Cal.App.4th 615, 78 Cal.Rptr.2d 66 (1998); *State ex rel. Warren v. Schwarz,* 219 Wis.2d 616, 579 N.W.2d 698 (1998); *Bryant v. State,* 974 S.W.2d 395 (Tex.App.-San Antonio 1998); *State v. Bracht,* 573 N.W.2d 176 (S.D.1997); *State v. Bowley,* 282 Mont. 298, 938 P.2d 592 (1997). The State has unilaterally breached a valid plea agreement that was accepted by the trial court. Therefore, the error in the instant proceeding was plain under then existing law.

**3. Determining whether the error affected substantial rights.** Having found an "error" that was "plain," we must now examine the third step in our analysis. We indicated in *Miller* that "[a]ssuming that an error is 'plain,' the inquiry must proceed to [the third] step and a determination made as to whether it affects the substantial rights of the defendant." *Miller,* 194 W.Va. at 18, 459 S.E.2d at 129. "To affect substantial rights means the error was prejudicial." *Id.* We restricted the meaning of prejudice in *Miller* to signify only an error that has "affected the outcome of the proceedings in the circuit court[.]" *Id.* Finally, *Miller* held that "the defendant rather than the prosecutor bears the burden of persuasion with respect to prejudice." *Id.*

It is without question that a "defendant waives significant constitutional rights by entering into a plea agreement, such as the right to examine and confront witnesses who would testify against the defendant, the privilege against compulsory self-incrimination, the presumption of innocence, and the right to a speedy trial." *State ex rel. Forbes v. Kaufman,* 185 W.Va. 72, 77, 404 S.E.2d

763, 768 (1991). *Accord Jackson v. State,* 706 A.2d 156, 120 Md.App. 113 (1998).

In the instant proceeding, Mr. Myers relinquished his constitutional rights with an understanding that, in doing so, he would be able to request mercy from the trial court without the State's opposition. However, the State opposed his request in direct violation of the plea agreement by recommending that mercy not be given. This type of error is one that "should be presumed prejudicial if the defendant cannot make a specific showing of prejudice." *Olano,* 507 U.S. at 735, 113 S.Ct. at 1778. Instances in which the United States Supreme Court has presumed prejudice include: *Hamilton v. Alabama,* 368 U.S. 52, 55, 82 S.Ct. 157, 159, 7 L.Ed.2d 114 (1961) (presumption of prejudice when defendant is denied counsel at arraignment); *White v. Maryland,* 373 U.S. 59, 60, 83 S.Ct. 1050, 1051, 10 L.Ed.2d 193 (1963) (prejudice presumed when defendant is denied counsel at preliminary hearing); *Herring v. New York,* 422 U.S. 853, 864, 95 S.Ct. 2550, 2556, 45 L.Ed.2d 593 (1975) (presumption of prejudice where defendant is denied right to give closing argument); *Cuyler v. Sullivan,* 446 U.S. 335, 349–50, 100 S.Ct. 1708, 1718–19, 64 L.Ed.2d 333 (1980) (presumption of prejudice where defense counsel labored under an actual conflict of interest that negatively affected his performance); *United States v. Cronic,* 466 U.S. 648, 659, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657 (1984) (presuming that trial is unfair if the defendant is denied counsel at a critical stage of the trial); *Penson v. Ohio,* 488 U.S. 75, 88, 109 S.Ct. 346, 354, 102 L.Ed.2d 300 (1988) (ruling that where there is a complete denial of defendant's appeal, prejudice is presumed).

This Court too, has presumed prejudice to a criminal defendant in some instances. *See* Syl. pt. 6, *State v. Omechinski,* 196 W.Va. 41, 468 S.E.2d 173 (1996) ("In criminal cases, when a trial court fails to comply with Rule 615 of the West Virginia Rules of Evidence, prejudice is presumed and reversal is required unless the prosecution proves by a preponderance of the evidence that the error was harmless."); *State v. Reedy,* 177 W.Va. 406, 411, 352 S.E.2d 158, 163 (1986) ("[J]oint representation is not per se violative of a

defendant's right to receive effective assistance.... Once a conflict is found, however, prejudice and ineffectiveness of counsel are presumed"); Syl. pt. 1, *State ex rel. Leonard v. Hey*, 269 S.E.2d 394 (W.Va.1980) ("A delay of eleven years between the commission of a crime and the arrest or indictment of a defendant, his location and identification having been known throughout the period, is presumptively prejudicial to the defendant and violates his right to due process of law."); Syl. pt. 8, *State v. Austin*, 93 W.Va. 704, 117 S.E. 607 (1923) ("Where upon the trial of a criminal case, during the address to the jury by defendant's counsel, the court engages in a colloquy with defendant's counsel relative to the testimony of the prosecuting witness, and unduly calls the jury's attention to testimony of the witness unfavorable to the accused, it will be presumed that the jury was influenced to the prejudice of the prisoner and a verdict of guilty will be set aside, and a new trial awarded.").

Part of the rationale used by courts in presuming prejudice under certain narrow circumstances is the difficulty in measuring the harm caused by the error in these circumstances. *See Strickland v. Washington*, 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984). The Supreme Court of Wisconsin addressed the issue of presumption of prejudice from a plea agreement violation in *State v. Smith*, 207 Wis.2d 258, 558 N.W.2d 379 (1997). In *Smith*, the defendant entered into a plea agreement with the prosecutor wherein the prosecutor agreed not to make a sentence recommendation. The prosecutor breached the plea agreement and, in fact, recommended a severe sentence to the trial court. The defendant's attorney failed to object. On appeal, the defendant in *Smith* argued that his counsel's failure to object violated his right to effective assistance of counsel. Part of the analysis of the defendant's ineffective assistance of counsel claim involved a requirement that the defendant prove he was prejudiced by the prosecutor's breach of the plea agreement. Given the difficult burden imposed upon the defendant to demonstrate prejudice under the circumstances, the appellate court dispensed with the requirement that the defendant had to prove prejudice.

Instead, the *Smith* court presumed such prejudice and held: "[W]e conclude that when a prosecutor agrees to make no sentence recommendation but instead recommends a significant prison term, such conduct is a material and substantial breach of the plea agreement. Such a breach of the State's agreement on sentencing is a 'manifest injustice' and always results in prejudice to the defendant." *Smith*, 558 N.W.2d at 389. *See also State v. Ross*, 166 Ariz. 579, 804 P.2d 112 (1990) (holding that prosecutor commits reversible error by violating plea agreement with defendant, even absent showing of actual prejudice). Although the decision in *Smith* was rendered in the context of an ineffective assistance of counsel analysis, we believe the decision is sound and appropriate in the context of our plain error discussion. Therefore, we hold that for the purposes of plain error analysis, when there exists a plea agreement in which the State has promised to remain silent as to specific sentencing matters and the State breaches such agreement by advocating specific matters at a sentencing hearing, prejudice to the defendant is presumed. In this situation, the burden then shifts to the State to prove beyond a reasonable doubt that its breach of the plea agreement did not prejudice the outcome of the proceeding. Merely showing that the trial court would have sentenced a defendant upon the same terms, even without such a breach, will not satisfy the State's burden. *See United States v. McCray*, 849 F.2d 304 (8th Cir.1988) (concluding that State's burden was not met by the trial court's statement that the prosecutor's recommendations at sentencing did not influence its sentencing decision, thus, such evidence did not ameliorate prosecutor's breach of plea agreement to remain silent at sentencing). In the instant proceeding the State has not met its burden of showing that its breach of the plea agreement was harmless beyond a reasonable doubt.

**4. Determining whether the error affected the fairness, integrity or public reputation of the judicial proceedings.** Satisfying the first three elements of the plain error doctrine does not end the inquiry. Before we may exercise our discretion to

**464**

correct the error we must determine whether the forfeited error seriously affected the fairness, integrity or public reputation of judicial proceedings. *See Johnson*, 520 U.S. at 469–70, 117 S.Ct. at 1550; *United States v. Velez–Vasquez*, 116 F.3d 58 (2d Cir.1997); *United States v. Gaydos*, 108 F.3d 505 (3d Cir.1997); *United States v. McQueen*, 108 F.3d 64 (4th Cir.1997); *United States v. McKinney*, 120 F.3d 132 (8th Cir.1997); *United States v. Brand*, 80 F.3d 560 (1st Cir.1996); *United States v. Jobe*, 101 F.3d 1046 (5th Cir.1996); *United States v. Ross*, 77 F.3d 1525 (7th Cir.1996).

It has been observed that "[a]lthough the [United States Supreme] Court has not described the contours of this discretionary inquiry with much precision, it has declined to exercise its discretion in the face of 'overwhelming' evidence that the outcome would have been the same in an error-free proceeding." *United States v. Bradstreet*, 135 F.3d 46, 50 (1st Cir.1998). Here, there is no showing that the outcome of the case would have been the same, had the State not violated the plea agreement.

Moreover, *Santobello* illustrates that the plea bargaining "phase of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances." *Santobello*, 404 U.S. at 262, 92 S.Ct. at 499.

Thus, extra protections must attend plea bargaining proceedings to secure the process due the defendant. Such security was not afforded to Mr. Myers in the plea proceedings underlying this appeal. For these reasons, then, we conclude that whenever the State violates a sentencing neutrality provision of a plea agreement, the violation seriously affects the fairness, integrity and public reputation of the proceeding. To hold otherwise would make a mockery of the plea bargaining process and trample upon the very essence of due process. Therefore, we have little trouble in finding the fourth element of our plain error analysis has been satisfied.

## C. The Appropriate Remedy

Having determined that plain error resulted from the State's violation of the terms and conditions of the plea agreement, we must now decide the remedy. This Court held in syllabus point 8, in part, of *Brewer* that "[t]here are two possible remedies for a broken plea agreement—specific performance of the plea agreement or permitting the defendant to withdraw his plea." When a plea agreement has been breached by the State, it is the province of this Court, or the trial court in the first instance, and not the defendant, to decide whether to grant specific performance of the plea agreement or permit withdrawal of the guilty plea. *See United States v. Gilchrist*, 130 F.3d 1131 (3d Cir.1997). In two previous decisions by this Court we permitted withdrawal of plea agreements where the State violated sentencing neutrality agreements. *See State v. Harlow*, 176 W.Va. 559, 346 S.E.2d 350 (1986); *State v. Olish*, 164 W.Va. 712, 266 S.E.2d 134 (1980).[13] The State has attempted to distinguish *Harlow* and *Olish* by noting that the violations in those cases occurred prior to the actual sentencing hearing, whereas the breach in the case sub judice occurred during the sentencing hearing. We are not persuaded by the distinction. In fact, we held in syllabus point 2 of *Olish* that "[w]here the guilty plea is sought to be withdrawn by the defendant after sentence is imposed, the withdrawal should be granted only to avoid manifest injustice." *State v. Olish*, 164 W.Va. 712, 266 S.E.2d 134. This Court observed in *Brooks*, 161 W.Va. at 417, 243 S.E.2d at 842, that "[a]ll state and federal decisions we . . . examined, have held that where a defendant pleads guilty as part of a plea bargain, and the prosecution breaches the agreement, defendant should be allowed to withdraw his plea." *Citing Dugan v. United States*, 521 F.2d 231 (5th Cir.1975); *White v. Gaffney*, 435 F.2d 1241 (10th Cir.1971); *People v. Bannan*, 364 Mich. 471, 110 N.W.2d 673 (1961); *Crossin v. State*, 262 So.2d 250 (Fla.App.1972); *People v. Caskey*,

**13.** The defendant's brief also cited *State v. Cook*, 184 W.Va. 625, 403 S.E.2d 27 (1991) (per curiam), wherein we allowed withdrawal of a plea agreement. We remind counsel that per curiam opinions stand alone factually and are not to be cited as precedent.

4 Ill.App.3d 920, 282 N.E.2d 250 (1972).[14] We believe that it would be a manifest injustice and inconsistent with our prior decisions to not allow Mr. Myers to withdraw his plea.[15]

## IV.

## CONCLUSION

In view of the matters presented, Mr. Myers' conviction and sentence are reversed. This case is remanded with instructions that he be permitted to withdraw from the plea and his plea agreement.

Reversed and Remanded.

Justice MAYNARD, deeming himself disqualified, did not participate in the decision of this case.

Judge MOATS, sitting by temporary assignment.

14. In syllabus point 1 of *State ex rel. Clancy v. Coiner*, 154 W.Va. 857, 179 S.E.2d 726 (1971), this Court stated further:

When it is apparent from the totality of circumstances that the entry of a guilty plea by a defendant was induced by a belief that certain promises had been made by the prosecuting attorney, which promises inure to the benefit of the defendant and the state, [and] such promises were not ... fulfilled, such plea is involuntary and void.

15. As a result of our decision to permit Mr. Myers to withdraw his plea, his remaining assignments of error are moot.