# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re*: **J.M., E.A., and K.A.**

**No. 17-0219** (Wood County 16-JA-71, 16-JA-72, & 16-JA-73)


## MEMORANDUM DECISION

Petitioner Mother B.M., by counsel Jessica E. Myers, appeals the Circuit Court of Wood County's February 3, 2017, order terminating her parental rights to J.M., E.A., and K.A.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Justin M. Raber, filed a response on behalf of the children in support of the circuit court's order. Responder Father Joshua A. (the non-offending father of K.A.), by counsel Eric K. Powell, also filed a response in support of the circuit court's order.[2] On appeal, petitioner argues that the circuit court erred in finding that she abused and neglected her children based on insufficient evidence and in terminating her parental rights to the children based on erroneous findings.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2016, the DHHR filed an abuse and neglect petition against petitioner alleging that she was driving her vehicle at a high rate of speed on June 9, 2016, when she struck a bank and rolled the vehicle three times. Two of her three children (E.A. and K.A.) were in the vehicle during the accident and were wearing nothing but diapers. Following the accident, emergency personnel removed petitioner and her two children from the vehicle, and they were transported by ambulance to a hospital. Despite the serious nature of the accident, the DHHR noted that K.A. had only scratches on his arm and a "goose egg" on his forehead, and E.A. had no discernible injuries. Neither child was admitted for treatment. It was reported that petitioner had a suspended

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]A cross assignment of error by Respondent Father J.A. was withdrawn on May 18, 2017.

driver's license and may have been "under the influence of some type of substance." She refused testing at the hospital for controlled substances or alcohol. By the time an officer arrived at the hospital, petitioner could not be found and had not been properly discharged. She left E.A. and K.A. at the hospital.

The DHHR further alleged that officers responded to a mental hygiene call in the late hours of June 9, 2016. Officers found petitioner wandering in the area of the accident. She was reportedly looking for her vehicle. She appeared belligerent and could not remember her address and misguided the officers in their attempts to find her home. Ultimately, officers took her back to the hospital where she stated that she had prescriptions for Xanax, Methadone, and other medications.

In June of 2016, the circuit court held a preliminary hearing. Petitioner was not present in person, but was represented by court-appointed counsel. Petitioner's counsel stated that she had no contact with petitioner. In July of 2016, the circuit court held an adjudicatory hearing. Petitioner was not present in person, but was represented by counsel. The DHHR moved for a continuance to resolve service concerns for certain parties. The circuit court granted the motion.

In August of 2016, the circuit court held a second adjudicatory hearing. Petitioner appeared and moved for a continuance for additional time to meet with her counsel. The circuit court granted the request and scheduled the next adjudicatory hearing for October of 2016. The circuit court ordered petitioner to submit to a drug screen and permitted visitation with the children if she passed her drug screen.[3]

In October of 2016, the circuit court held a third adjudicatory hearing. At that hearing, an officer and a DHHR worker testified to the details of the accident and the subsequent events at the hospital. The officer also testified that petitioner's license was suspended for a medical issue.[4] The DHHR worker explained that petitioner left the hospital without E.A. and K.A. on the night of the accident and that she had not directed any other person to care for them before leaving. It is unclear when, or if, she intended to return to the hospital, but at least one hour passed before petitioner was located by authorities.[5]

The DHHR worker further testified that E.A. and K.A. were "very dirty" when she saw them at the hospital. The DHHR worker also noted in her testimony that petitioner had a history of drug use. There was also testimony that petitioner had previously left her children at a gas station, resulting in the gas station staff providing care for the children and ultimately contacting Child Protective Services ("CPS"). At the conclusion of the hearing, the circuit court found by

---

[3]At a subsequent hearing, the DHHR noted that petitioner's drug screen tested positive for morphine.

[4]It is unclear what medical issue resulted in the suspension of petitioner's license.

[5]The exact amount of time petitioner was absent from the hospital is unclear, but the record indicates that it was at least one hour.

clear and convincing proof that petitioner abused and neglected her children by leaving them unattended at the hospital.

In January of 2017, the circuit court held a dispositional hearing. Petitioner was not present in person, but was represented by counsel. According to the DHHR, petitioner was given contact information for a CPS worker but made no attempt to contact the DHHR to initiate services. It was reported that petitioner provided no update as to her whereabouts and failed to visit with her children during these proceedings. Both the DHHR and the guardian recommended termination. By order entered on February 3, 2017, the circuit court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of neglect in the near future and that the children required continuity of care and caretakers. As such, the circuit court terminated petitioner's parental rights to the children.[6] Thereafter, the circuit court held permanency review hearings and granted "legal and physical custody" of the children to Joshua A. It is from the termination order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in finding that she abused and neglected her children. Petitioner claims that the evidence of her conduct at the hospital, and immediately thereafter, was insufficient to prove abuse or neglect under the clear and convincing standard of proof. Petitioner asserts, as she did below, that her actions were the result of her injuries from the accident and should not be held against her. The DHHR, guardian, and Respondent Father Joshua A. respond that the evidence was sufficient to support the circuit court's findings.

---

[6]Petitioner's parental rights to the children were terminated below. Further, each child has a different biological father. According to the DHHR, the parental rights of David M. (father of J.M.) and the unknown father of E.A. were terminated below. Joshua A. is the non-offending father of K.A. His parental rights to K.A. are intact.

We have previously held that

> "W[est] V[irginia] Code [§] 49-6-2(c) [now West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing proof.' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W.Va. 438, 485 S.E.2d 176 (1997). West Virginia Code § 49-1-201 defines a "neglected child" as a child "[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian or custodian to supply the child with necessary . . . supervision" not based solely on the parent's lack of financial means.

In this case, it is undisputed that petitioner drove her vehicle on a suspended license with two young children (clothed only in diapers) as passengers; was involved in a serious vehicular accident; left the hospital without properly discharging; and left E.A. and K.A. (then one year old and four years old, respectively) unsupervised at the hospital with no clear intention to return for them.[7] While she attempts to forward the affirmative defense that she suffered an injury in the accident that caused her behavior, there was no medical evidence presented below that petitioner was disoriented or confused due to an injury from the accident. There was, however, evidence admitted into the record that petitioner had previously left her children at a gas station, requiring CPS intervention. Notably, E.A. and K.A. were at ages that require significant adult supervision. Based on the circumstances of this case, we find no error with regard to the sufficiency of the evidence.

Petitioner's second assignment of error is that the circuit court erred in terminating her parental rights. Petitioner claims that there was insufficient evidence to support the circuit court's finding regarding her likelihood to correct her neglect. Specifically, petitioner claims that she was not provided with services or an improvement period to attempt to correct the conditions of abuse and neglect. According to her argument, where she had no services or improvement period to demonstrate her likelihood to correct the conditions of neglect, the circuit court could not find that there was no reasonable likelihood that she could do so. We disagree.

The issue before us is whether the circuit court committed error in finding that there was no reasonable likelihood that the conditions of abuse or neglect could be substantially corrected in the near future. West Virginia Code §§ 49-4-604(c)(2) and (3) provide that "no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected" exists under the following circumstances, among others:

---

[7]There is no indication in the record on appeal that E.A. and K.A. were admitted for treatment or under the care of hospital staff.

(2) The abusing parent or parents have willfully refused or are presently unwilling to cooperate in the development of a reasonable family case plan designed to lead to the child's return to their care, custody and control; [or]

(3) The abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]

According to the undisputed evidence presented by the DHHR, petitioner was provided with contact information for a CPS worker, but she made no attempt to contact that CPS worker. Further, during the proceedings below, petitioner failed to appear for many of the scheduled hearings; failed to provide anyone with an update as to her whereabouts throughout the proceedings; failed a drug screen for morphine without providing a valid prescription for that substance; and failed to visit her children at all. Petitioner clearly failed to participate throughout this case. Given these circumstances, we find that the evidence established that petitioner refused to and was unwilling to cooperate with the DHHR and failed to follow through with the DHHR's efforts to help her. As such, there is no error in the circuit court's finding regarding her reasonable likelihood to correct the conditions of neglect in the near future.

To the extent petitioner argues that she was entitled to an improvement period, we also disagree. First, we have explained that "[t]ermination . . . may be employed without the use of intervening less[-]restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." *In re Katie S.*, 198 W.Va. at 82, 479 S.E.2d at 592, syl. pt. 7, in part. Here, the circuit court's findings foreclosed the need an improvement period or any less-restrictive dispositional alternatives than termination.

Second, we have held that

> in order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Kaitlyn P.*, 225 W.Va. 123, 126, 690 S.E.2d 131, 134 (2010). Petitioner did not acknowledge the underlying problems at issue in this case. Therefore, she was not entitled to a period of parental improvement designed to remedy the conditions of neglect. Without an acknowledgement of the problem, an improvement period would have been an exercise in futility in this case. For those reasons, we find no error in the circuit court's termination without granting petitioner an improvement period.

In this case, the circuit court properly found that there was no reasonable likelihood that she could substantially correct the conditions of abuse and neglect in the near future. Additionally, the circuit court found that the children's best interests required termination. West Virginia Code § 49-4-604(b)(6) directs circuit courts to terminate parental rights based on these findings.

5

While we affirm the circuit court's termination of petitioner's parental rights, our review of this matter does not end there.[8] We note several deficiencies in the parties' briefs and the circuit court's orders regarding the permanency of the children. Rule 11(i) of the West Virginia Rules of Appellate Procedure provides that briefs in abuse and neglect appeals "filed by the parties (including the guardian ad litem) must contain a section . . . setting forth the current status of the minor children and any plans for permanent placement, and the current status of the parental rights of all the children's parents." The parties failed to adequately follow Rule 11(i).[9]

Further, having reviewed the circuit court's permanency order, as amended and entered on May 15, 2017, we find that it fails to achieve permanency for the children. Rule 3(n) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings defines "permanent placement" as follows:

---

[8]As we recently noted in *In re Timber M.*, 231 W.Va. 44, 60, 743 S.E.2d 352, 368 (2013):

> [T]his Court has previously addressed matters not raised in the appeal of cases involving the welfare of children. *See In re Jonathan Michael D.*, 194 W.Va. 20, 27, 459 S.E.2d 131, 138 (1995) ("On the issue of the improvement period, we *sua sponte* address an issue of particular concern to this Court."); *In re Jamie Nicole H.*, 205 W.Va. 176, 183, 517 S.E.2d 41, 48 (1999) ("While Appellant has not raised the sufficiency of the trial court's dispositional order, we address this issue *sua sponte*."). *Cf. In re K.R.*, 229 W.Va. 733, 744 n. 23, 735 S.E.2d 882, 893 n. 23 (2012) ("While neither party assigned this specific ruling as error, this does not affect this Court's ability to determine it to be error: [I]t is within the authority of this Court to "*sua sponte*, in the interest of justice, notice plain error." *Cartwright v. McComas*, 223 W.Va. 161, 164, 672 S.E.2d 297, 300 (2008) (quoting Syl. Pt. 1, in part, State v. Myers, 204 W.Va. 449, 513 S.E.2d 676 (1998).")); *Ringer v. John*, 230 W.Va. 687, 742 S.E.2d 103 (2013) (Court deciding case on the basis of an issue not raised by the parties).

[9]Petitioner fails to include any Rule 11(i) statement. The guardian provides only the following skeletal statement: "J.M., E.A., & K.A. are all placed with Respondent Father, J[oshua] A., by Order of the Circuit Court, entered March 29, 2017." The guardian's use of the word "placed" does not indicate a method of permanency (i.e., adoption, legal guardianship, etc.). Further, although referenced by the guardian, the circuit court's March 29, 2017, order is not included in the record on appeal and was not made a part of the record in a supplemental appendix. The DHHR states that "[a]ll three children have been reunified with J[oshua] A.[,]" which mirrors language in the case plan filed prior to the dispositional hearing that indicated that the children were then placed with K.A.'s paternal grandmother with a permanency plan of "reunification" with Joshua A. The word "reunification" is incorrect here because two of the children (E.A. and J.M.) cannot legally "reunify" with Joshua A., who is not their parent. For his part, Joshua A. states only that K.A. was in the physical custody of his paternal grandmother and in the legal custody of the DHHR. Joshua A. provides no explanation for K.A.'s placement with the grandparent, and he provides no discussion of E.A. or J.M. Based on these statements, the permanency plans for E.A. and J.M. are unclear.

"Permanent placement" of a child shall mean:

> (1) The petition has been dismissed and the child has been returned to the home or to a relative with no custodial supervision by the Department;
>
> (2) The child has been placed in the permanent custody of a non-abusive parent; or
>
> (3) A permanent out-of-home placement of the child has been achieved following entry of a final disposition order. A permanent out-of-home placement has been achieved only when the child has been adopted, placed in a legal guardianship, placed in another planned permanent living arrangement (APPLA), or emancipated[.]

Moreover, West Virginia Code § 49-4-608(e) provides that

> [a]t the conclusion of the [permanency] hearing the court shall, in accordance with the best interests of the child, enter an order containing all the appropriate findings. The court order shall state:
>
> . . . .
>
> (6) . . . in the case of any child for whom another planned permanent living arrangement [APPLA] is the permanency plan, the court shall (A) inquire of the child about the desired permanency outcome for the child; (B) make a judicial determination explaining why, as of the date of the hearing, another planned permanent living arrangement is the best permanency plan for the child; and, (C) provide in the court order compelling reasons why it continues to not be in the best interest of the child to (i) return home, (ii) be placed for adoption, (iii) be placed with a legal guardian, or (iv) be placed with a fit and willing relative.

In this case, the circuit court's May 15, 2017, amended order found that permanency was achieved by placing the children "in the legal and physical custody of [Joshua A.]" Without question, it is proper in this case to grant Joshua A., as a non-offending parent, permanent custody of K.A. *See* W.Va. R. Proc. for Child Abuse and Neglect P. 3(n)(2) and W.Va. Code § 49-4-604(b)(6) (upon terminating parental rights of an abusing parent, circuit court shall "commit the child to the permanent sole custody of the nonabusing parent"). However, E.A. and J.M. were not Joshua A.'s children. Therefore, merely granting Joshua A. "legal and physical custody" of E.A. and J.M. does not adequately achieve permanency for those children. Assuming that the circuit court intended to place E.A. and J.M. in an APPLA with Joshua A., its amended order fails to make any of the requisite findings as required by statute. Indeed, the circuit court's amended order fails to cite to any legal authority regarding permanent placement.

Permanency for children involved in abuse and neglect proceedings is of the utmost importance to this Court. Given the circumstances of this case, we remand this matter for further

proceedings to achieve permanency for these children, as contemplated by the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings and the relevant statutory authority.

We remind the circuit court that permanent placement review hearings must be held at least once every three months until permanency is achieved and that permanency must be achieved within twelve months of disposition. *See* W.Va. R. Proc. for Child Abuse and Neglect P. 39(b) (establishing a duty to hold a permanent placement review hearing at least once every three months until permanent placement is achieved, among other requirements); *id.* at Rule 43 (requiring circuit courts to achieve permanent placement of an abuse and neglected child within twelve months of disposition). Additionally, the Court reminds the guardian that his "role in abuse and neglect proceedings does not actually cease until such time as the child[ren are] placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, the circuit court's February 3, 2017, order is hereby affirmed, but the matter is remanded for further proceedings regarding the children's permanency as directed.

Affirmed and remanded.

**ISSUED**:

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker