693 S.E.2d 482

**STATE of West Virginia, Appellee,**

v.

**David M. MARTIN, Appellant.**

No. 35225.

Supreme Court of Appeals of West Virginia.

Submitted April 13, 2010.

Decided April 21, 2010.

Michele Rusen, Esquire, Rusen and Auvil, PLLC, Parkersburg, WV, for Appellant.

Darrell V. McGraw, Jr., Esquire, Attorney General, Robert D. Goldberg, Esquire, Assistant Attorney General, for Appellee.

PER CURIAM:

This is an appeal of a December 15, 2008, final order from the Circuit Court of Wood County sentencing the defendant/appellant David Martin (hereinafter "Mr. Martin") to not less than one nor more than ten years in the state penitentiary upon his entry of a guilty plea to one count of breaking and entering pursuant to *W.Va.Code* § 61–3–12. Mr. Martin now seeks to withdraw his guilty plea on two grounds. First, Mr. Martin argues that the circuit court erred by accepting his plea when questions concerning his mental competency existed. Second, Mr. Martin argues that the State violated the terms of the plea agreement, which called for him to plead guilty to one count of breaking and entering in exchange for the State agreeing

to make a non-binding recommendation of probation. The State violated this plea agreement when the prosecutor made the following statement at the sentencing hearing:

> I find it hard to believe … that Mr. Martin could comply with the terms and conditions of probation. I ask that the court deny any motion for probation or other alternative sentence.

After carefully reviewing the briefs, the legal authority cited and the record presented for consideration, we agree with Mr. Martin that the State violated the terms of the plea agreement. We therefore reverse and remand this matter to the Circuit Court of Wood County for further proceedings outlined in this opinion.

## I.

### Facts & Background

On January 28, 2007, Mr. Martin was arrested and charged with one count of breaking and entering a building owned by Catholic Community Homemaker Services, Inc. Mr. Martin was apprehended while still inside the building and the criminal complaint states that he entered the building "to steal money." A Wood County grand jury returned a one count indictment against Mr. Martin, charging him with breaking and entering pursuant to *W.Va.Code* § 61–3–12. The circuit court appointed attorney Joseph Munoz to represent him. On April 20, 2007, Attorney Munoz requested that Mr. Martin undergo a mental health evaluation. The circuit court granted this motion and Mr. Martin was subsequently evaluated by Dr. Christi Cooper–Lehki, who determined that Mr. Martin was competent to stand trial and that he:

> did not, as a result of mental disease or defect, lack substantial capacity either to appreciate the nature and quality or wrongfulness of his conduct or to conform his conduct to the requirements of the law,

either at the time of the commission of the alleged acts or at the time of the forensic interview.

On May 14, 2008, Mr. Martin agreed to plead guilty to the single count of breaking and entering charged in the indictment in exchange for the State's agreement to make a non-binding recommendation of probation.[1] Following a lengthy review of the terms of the plea agreement, the constitutional rights Mr. Martin was waiving and an inquiry into his mental state, the circuit court accepted the plea agreement.

A sentencing hearing was held on July 17, 2008, at which time the prosecutor stated: "Your honor, I don't have anything to add, outside of the recommendation contained within the plea agreement." The circuit judge had concerns about Mr. Martin's mental state and therefore deferred sentencing and ordered Mr. Martin to undergo a mental health evaluation at the Anthony Correctional Center. Upon arriving at the Anthony Center, Mr. Martin displayed bizarre mental behavior and was sent back to the regional jail after only one day because the Anthony Center did not "have the capabilities of meeting [his] mental needs which would result in an inaccurate evaluation," according to the Anthony Center warden.

The circuit court held another sentencing hearing on December 15, 2008. Attorney Munoz acknowledged that Mr. Martin has mental "issues that need to be addressed," but stated that prison was not the proper place to address these issues and asked the court to grant him probation. The prosecutor then addressed the court and stated:

> Given the information contained in the presentence report and Mr. Martin's behavior since the time of the initial presentence report, I think it would be difficult for the court to make a finding that he would be likely to comply with any form of

---

1. The four conditions set forth in the Plea Agreement are as follows:

    1. The Defendant agrees that he shall plead guilty to the felony offense of Breaking and Entering as charged in the above styled Indictment;

    2. The State agrees to a non-binding recommendation of probation.

    3. The Defendant agrees to make full restitution for the act alleged in the Indictment.

    4. There are no further agreements on sentencing.

alternative sentence, whether it be probation or house arrest.

I don't believe that, at this point in time, there is a residence available to him, anyway, so that really leaves us with the choices of probation or incarceration in the state penitentiary. I find it hard to believe, based upon the information that I have available to me, that Mr. Martin could comply with the terms and conditions of probation. *I ask that the court deny any motion for probation or other alternative sentence.*

(Emphasis added).

Attorney Munoz did not object to the State's recommendation that probation be denied. The circuit court denied Mr. Martin's motion for probation or for an alternative sentence, and sentenced him to a term of not less than one nor more than ten years in the state penitentiary. Mr. Martin appeals from this ruling.

## II.

### *Standard of Review*

■■■■ The standard of review for issues involving the breach of a plea agreement is set forth in Syllabus Point 1 of *State ex rel. Brewer v. Starcher*, 195 W.Va. 185, 465 S.E.2d 185 (1995), in which this Court held:

Cases involving plea agreements allegedly breached by either the prosecution or the circuit court present two separate issues for appellate consideration: one factual and the other legal. First, the factual findings that undergird a circuit court's ultimate determination are reviewed only for clear error. These are the factual questions as to what the terms of the agreement were and what was the conduct of the defendant, prosecution, and the circuit court. If disputed, the factual questions are to be resolved initially by the circuit court, and these factual determinations are reviewed under the clearly erroneous standard. Second, in contrast, the circuit court's articulation and application of legal principles is scrutinized under a less deferential standard. It is a legal question whether specific conduct complained about breached the plea agreement. Therefore, whether the disputed conduct constitutes a breach is a question of law that is reviewed *de novo.*

## III.

### *Analysis*

■■■■ Mr. Martin argues that he should be allowed to withdraw his guilty plea because the State violated the terms of the plea agreement. In *Brewer, supra,* Justice Cleckley discussed the equities involved in plea agreements, stating "[b]ecause a plea agreement requires a defendant to waive fundamental rights, we are compelled to hold prosecutors and courts to the most meticulous standards of both promise and performance." *Brewer,* 195 W.Va. at 192, 465 S.E.2d at 192. *See also State ex rel. Gray v. McClure,* 161 W.Va. 488, 242 S.E.2d 704 (1978) ("A prosecuting attorney or his successor is bound to the terms of a plea agreement once the defendant enters into a plea of guilty or otherwise acts to his substantial detriment in reliance thereon."). The United States Supreme Court addressed the issue in *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971), stating "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Similarly, in Syllabus Point 4 of *State v. Myers,* 204 W.Va. 449, 513 S.E.2d 676 (1998), we held:

When a defendant enters into a valid plea agreement with the State that is accepted by the trial court, an enforceable "right" inures to both the State and the defendant not to have the terms of the plea agreement breached by either party.

The record is clear that Mr. Martin entered into a valid plea agreement with the State which was accepted by the circuit court. Once the plea agreement was accepted by the circuit court, the right that inured to Mr. Martin was that the State was obligated to make a non-binding recommendation of probation. The State breached its promise to Mr. Martin at the sentencing hearing when the prosecutor stated:

I find it hard to believe ... that Mr. Martin could comply with the terms and conditions of probation. I ask that the court deny any motion for probation or other alternative sentence.

■ The State does not dispute that it violated the plea agreement, rather it argues that because counsel for Mr. Martin failed to object when the breach occurred, Mr. Martin must show that the breach constituted plain error. Plain error analysis involves a four-pronged test. "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syllabus Point 7, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

## A. Error

■ The first step in our analysis is determining whether an "error" occurred, which we addressed in Syllabus Point 3 of *Myers, supra:*

> The analysis of whether an "error" occurred under the plain error doctrine in the context of a plea agreement necessarily involves two determinations: (1) whether there existed in a plea agreement an enforceable right which benefitted the defendant, and (2) whether the defendant waived or forfeited the benefits of such a right.

It is undisputed that Mr. Martin entered into a valid plea agreement and that an enforceable right inured to him at the time the circuit court accepted the plea agreement. Having determined that an enforceable right was created, we must now determine whether Mr. Martin waived or forfeited that right when the State breached the terms of the plea agreement. In Syllabus Point 5 of *Myers*, we addressed how to determine whether a defendant waived or forfeited a right that inured to him in the context of a plea agreement. We stated:

> In order to establish that there has been a known waiver of a plea agreement right by a defendant, the State has the burden of showing such a waiver. To carry this burden, the State must show more than

the mere fact that a defendant remained silent at the time the plea agreement right was violated by the State, or that the defendant failed to raise the violation in a post-verdict motion. To meet its burden, the State must point to some affirmative evidence in the record which establishes beyond a reasonable doubt that a defendant intentionally relinquished or abandoned a plea agreement right. Examples of how the State may meet this burden include, but are not necessarily limited to, demonstrating on the record: (1) that a document was signed by the defendant and his/her counsel waiving a plea agreement right, or (2) that the defendant or his/her counsel stated in open court that a previous plea agreement had been relinquished or abandoned.

■ In the case *sub judice*, the only argument the State advanced was that Mr. Martin remained silent and failed to object during the sentencing hearing when the plea violation occurred. This does not satisfy the State's burden of establishing waiver under Syllabus Point 5 of *Myers*. "If a [right] was violated during the ... proceedings, and if the defendant did not waive the [right], then there has been an 'error' ... despite the absence of a timely objection." *United States v. Olano*, 507 U.S. 725, 733–34, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993). We therefore find that an "error" did occur in this case and proceed to the second step of the plain error analysis.

## B. Determining whether the error was plain.

■ In Syllabus Point 6 of *Myers*, we discussed the two contexts in which an error may be plain, stating:

> First, an error may be plain under existing law, which means that the plainness of the error is predicated upon legal principles that the litigants and trial court knew or should have known at the time of the prosecution. Second, an error may be plain because of a new legal principle that did not exist at the time of the prosecution, *i.e.*, the error was unclear at the time of the trial; however, it becomes plain on

appeal because the applicable law has been clarified.

In the present matter, the error was plain under existing law. Prior to the State's violation of the plea agreement in this matter, cases by this Court and courts in other jurisdictions affirmatively held that a plea agreement validly entered into by the parties and accepted by the court could not be breached unilaterally. *See State v. Myers, supra; State ex rel. Gray v. McClure, supra; State ex rel. Brewer v. Starcher, supra; Santobello v. New York, supra; U.S. v. Ailsworth,* 927 F.Supp. 1438, (D.Kan.1996). The State unilaterally breached the plea agreement it entered into with Mr. Martin. This error was plain under then existing law and we therefore proceed to the third step of our plain error analysis.

### C. Determining whether the error affected substantial rights.

In *State v. Miller,* 194 W.Va. 3, 18, 459 S.E.2d 114, 129 (1995), we said "to affect substantial rights means the error was prejudicial." In Syllabus Point 7 of *Myers,* we explained:

> For the purposes of plain error analysis, when there exists a plea agreement in which the State has promised to remain silent as to specific sentencing matters and the State breaches such agreement by advocating specific matters at a sentencing hearing, prejudice to the defendant is presumed. In this situation, the burden then shifts to the State to prove beyond a reasonable doubt that its breach of the plea agreement did not prejudice the outcome of the proceeding. The mere showing that the trial court would have sentenced a defendant upon the same terms, even without such a breach, will not satisfy the State's burden.

In the present matter, the State's breach of the plea agreement was more egregious than that which occurred in *Myers.* In *Myers,* the plea agreement called for the prosecutor to remain silent on the issue of whether the defendant should receive a sentence of life in prison with or without mercy. The prosecutor violated this agreement by stating that the defendant should be sentenced to life without the possibility of pa-

role. While the *Myers* prosecutor breached his agreement to remain silent, the prosecutor in the present matter agreed to make a non-binding recommendation of probation on behalf of Mr. Martin. Therefore, the above quoted syllabus point is applicable to a situation like the present one in which the State has promised to advocate a favorable position on behalf of a defendant pursuant to a plea agreement at a sentencing hearing and subsequently breaches that agreement by advocating an opposite position at the actual hearing. We therefore presume that Mr. Martin has been prejudiced by the prosecutor's breach.

The only argument advanced by the State against Mr. Martin being prejudiced is that the circuit court likely would not have granted him probation even if the State had complied with the plea agreement. Assuming this argument is correct, the State has still failed to satisfy its burden under Syllabus Point 7 of *Myers:* "The mere showing that the trial court would have sentenced a defendant upon the same terms, even without such a breach, will not satisfy the State's burden." We therefore conclude that Mr. Martin has satisfied the third prong of the plain error test and turn to the final factor of our analysis.

### D. Did the error affect the fairness, integrity or public reputation of the proceedings.

In *Myers,* we stated that "extra precautions must attend plea bargaining proceedings to secure the process due the defendant." 204 W.Va. at 464, 513 S.E.2d at 691. We held at Syllabus Point 8 of *Myers* that:

> Whenever the State violates a sentencing neutrality provision of a plea agreement, the violation seriously affects the fairness, integrity and public reputation of the proceeding.

This holding applies to the facts of the case *sub judice,* that is, when the State agrees to make a recommendation for a defendant to receive probation in a plea agreement, then violates that agreement by making the opposite recommendation at the sentencing hearing, this violation seriously affects the fair-

ness, integrity and public reputation of the proceeding. As we observed in *Myers*, "[t]o hold otherwise would make a mockery of the plea bargaining process and trample upon the very essence of due process." 204 W.Va. at 464, 513 S.E.2d at 691.

### E. Remedy

 Having determined that plain error resulted from the State's violation of the plea agreement, we now decide the remedy. In Syllabus Point 8 of *Brewer*, Justice Cleckley set forth two possible remedies for a broken plea agreement: "specific performance of the plea agreement or permitting the defendant to withdraw his plea. A major factor in choosing the appropriate remedy is the prejudice caused to the defendant." In Syllabus Point 9 of *Myers*, we further stated that:

> When a plea agreement has been breached by the State, it is the province of this Court, or the trial court in the first instance, and not the defendant, to decide whether to grant specific performance of

the plea agreement or permit withdrawal of the guilty plea.

Taking into account all of the circumstances of the present matter, we believe the appropriate remedy is to allow Mr. Martin to withdraw his guilty plea.[2]

### IV.

#### *Conclusion*

Mr. Martin's conviction and sentence are reversed. This case is remanded with instructions that he be permitted to withdraw from the plea and his plea agreement.

Reversed and Remanded.

---

**2.** As a result of our decision to permit Mr. Martin to withdraw his plea, we decline to address his other assignment of error—that the circuit court erred by accepting his guilty plea when questions concerning his mental competency existed.