# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

Harry G.,
Petitioner Below, Petitioner

vs)  No. 16-0945 (Lewis County 14-C-119)

Patrick Mirandy, Warden,
St. Marys Correctional Center,
Respondent Below, Respondent

**FILED**

**September 5, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Harry G., by counsel G. Phillip Davis, appeals the Circuit Court of Lewis County's September 6, 2016, order denying his petition for writ of habeas corpus.[1] Respondent Patrick Mirandy, Warden, by counsel Shannon Frederick Kiser, filed a response. On appeal, petitioner argues that the circuit court erred in denying his habeas petition on the grounds of ineffective assistance of counsel and breached plea agreement.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2011, petitioner was indicted on one count of sexual abuse by a person in a position of trust and seven counts of incest. Petitioner later entered into a plea agreement whereby he agreed to plead guilty to four counts of incest in exchange for the State's dismissal of one count of incest and its agreement to not re-indict petitioner on the other counts, which had been previously dismissed without prejudice. The State also agreed that it would not object to petitioner's request for home incarceration.

On April 16, 2012, a sentencing hearing was held. During this hearing, the circuit court asked the State whether it had anything to say, and the following exchange ensued:

> MR. MORRIS [Prosecuting attorney]: I do, Your Honor,
> and have – pursuant to the plea agreement, I have some things I

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

need to do. There are three victims that would like to address the Court. Would you like them to go first or would you like me to –

BY THE COURT: The victims are next.

MR. MORRIS: Okay. Well, Your Honor, the State's recommendation is that Mr. Goldsmith be confined in the penitentiary, that's based on the recommendation of the Court's Probation Officer, the official statement of Corporal Clark and –

BY THE COURT: Mr. Morris, didn't you agree in the plea agreement to recommend home confinement?

MR. MORRIS: No, I did not, Your Honor, and the State would recommend that any and all sentences pronounced –

BY THE COURT: Well, that's what I read.

MS. WILLIAMS [Defense counsel]: Your Honor, I –

MR. MORRIS: - by the Court run concurrently.

MS. WILLIAMS: I believe the State has agreed not to object to our motion to home confinement within the plea agreement.

BY THE COURT: I don't want to get into anything here that's –

MS. WILLIAMS: I believe that that would be paragraph six, number eight.

MR. MORRIS: I did not object to that motion for home confinement, Your Honor. My recommendation – I have the plea agreement right here.

BY THE COURT: Well, wait just a minute, let's just see what it says here, just a second. Because maybe my recollection is wrong. I'm not trying to embarrass you or anything, I'm just trying to make sure we're all right here.

Well, it says, "The State will not object to Defendant's request for home confinement.", [sic] that's the exact words.

MR. MORRIS: I'm not objecting.

2

BY THE COURT: All right. And you will recommend concurrent sentences.

MR. MORRIS: I was just about to get to that, Your Honor.

BY THE COURT: All right. Well, okay, I see. "The state will not object to Defendant's request for home confinement." Okay. Proceed.

MR. MORRIS: Thank you, Your Honor. The State will recommend that any and all sentences pronounced by the Court run concurrently, and the State will move to nolle pross [sic] Count Eight of the indictment, with prejudice.

The circuit court denied petitioner's request for home incarceration, and it proceeded to sentence petitioner. On one count, petitioner was sentenced to an indeterminate term of incarceration of five to fifteen years. He was sentenced to an indeterminate term of imprisonment of five to ten years on the remaining three counts. The first two counts on which petitioner was sentenced were ordered to run consecutively to one another, and the remaining two counts were ordered to run consecutively to the first count and concurrently to the second count on which petitioner was sentenced. This resulted in an effective sentence of ten to twenty-five years of incarceration.[2]

On September 3, 2014, petitioner filed a pro se petition for writ of habeas corpus. Counsel was appointed to represent him in his habeas proceeding, and petitioner filed a "Supplemental Petition for Habeas Corpus." In this filing, petitioner raised thirteen distinct grounds for habeas corpus relief; on appeal to this court, however, petitioner only challenges the circuit court's ruling on two of the grounds raised: ineffective assistance of counsel and breached plea agreement. Petitioner asserts that his counsel was ineffective because she pressured him into accepting a plea agreement.[3] Petitioner asserts that the State breached the parties' plea agreement by recommending incarceration at sentencing in spite of the agreement to not oppose petitioner's request for home incarceration.

This Court reviews appeals of circuit court orders denying habeas corpus relief under the following standard:

_____

[2]Although petitioner's convictions were obtained pursuant to the statute criminalizing incest, the dates of petitioner's incestuous conduct differed, which resulted in different sentences attaching to the convictions.

[3]Petitioner also asserts generally that the circuit court erred in denying all of his grounds for habeas corpus relief. However, he fails to address any of these grounds specifically, except for ineffective assistance of counsel and breached plea agreement. Because petitioner's broad assertion of error in denying all of his claims fails to comport with West Virginia Rule of Appellate Procedure 10(c)(7), which requires "argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and cit[ation to] the authorities relied on," it will not be considered on appeal.

"In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W.Va. 375, 701 S.E.2d 97 (2009).

In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Syl. Pt. 5, *State v. Miller*, 194 W.Va. 3, 6, 459 S.E.2d 114, 117 (1995).

Petitioner first contends that his counsel instructed him to come to her office every day for a week and "coerced" him into accepting the plea. Petitioner asserts that, if not for this coercion, he would have taken his case to trial. During petitioner's plea colloquy, however, he was asked about the voluntariness of his plea:

Q [the court]: Is your plea of guilty voluntary?

A [petitioner]: Yes, sir.

Q: Is your plea of guilty of your own free will and accord?

A: Yes, sir.

Q: Is it your decision to plead guilty?

A: Yes, sir.

Q: Has anyone used any force, pressure or threats against you or anyone else to induce you to plead guilty in this case?

A: No, sir, that I know of.

Petitioner did not indicate that his guilty plea was the result of any coercion, and he also indicated that he was happy with his representation and that there was nothing he wanted his counsel to do that she failed to do.

4

At petitioner's omnibus hearing, despite testifying that he believed he was pressured into entering the plea agreement, he testified that his counsel did not make any threats against him. Petitioner also testified that his counsel made no promise that he would receive a certain sentence if he entered into the plea agreement. Petitioner's trial counsel testified to informing petitioner that the decision of whether or not to accept the plea agreement rested entirely with petitioner. Petitioner's trial counsel further testified that petitioner agreed to the plea agreement, changed his mind about entering a plea, and then returned to her office, unprompted, to inform counsel that he did, in fact, wish to enter into the plea agreement. The circuit court, therefore, concluded that petitioner's plea was voluntary, that he understood his plea agreement, and that he had expressed his satisfaction with his counsel's representation. The circuit court's findings on this ground were not clearly erroneous.

Petitioner also asserts that the State breached the parties' plea agreement by initially recommending incarceration when it agreed not to oppose petitioner's request for home incarceration.

> Cases involving plea agreements allegedly breached by either the prosecution or the circuit court present two separate issues for appellate consideration: one factual and the other legal. First, the factual findings that undergird a circuit court's ultimate determination are reviewed only for clear error. These are the factual questions as to what the terms of the agreement were and what was the conduct of the defendant, prosecution, and the circuit court. If disputed, the factual questions are to be resolved initially by the circuit court, and these factual determinations are reviewed under the clearly erroneous standard. Second, in contrast, the circuit court's articulation and application of legal principles is scrutinized under a less deferential standard. It is a legal question whether specific conduct complained about breached the plea agreement. Therefore, whether the disputed conduct constitutes a breach is a question of law that is reviewed de novo.

Syl. Pt. 1, *State v. Wilson*, 237 W.Va. 288, 288, 787 S.E.2d 559, 560 (2016) (internal quotations and citations omitted).

As set forth above, the State did initially recommend incarceration. Following inquiry by the circuit court and direction to the relevant paragraph of the plea agreement by counsel for petitioner, the State clarified its position and asserted that it did not object to home incarceration for petitioner. The circuit court was knowledgeable about the plea agreement's terms. This factual scenario is markedly different from the cases in which we have found a plea agreement to have been breached. For instance, in *State v. Martin*, 225 W.Va. 408, 411, 693 S.E.2d 482, 485 (2010), the State recommended that probation be denied in spite of a provision in the plea agreement requiring the State to recommend probation. *Id.* at 411, 693 S.E.2d at 485. The defendant's attorney failed to object to the State's recommendation that probation be denied. *Id.* The circuit court proceeded to deny the defendant's motion for probation or an alternative

5

sentence and sentenced him to incarceration in the state penitentiary. *Id.* On appeal, this Court concluded that the State's violation of the plea agreement was plain error. *Id.* at 415, 693 S.E.2d at 489.

In *State v. Myers*, 204 W.Va. 449, 513 S.E.2d 676 (1998), contrary to the terms of the plea agreement, the State argued at sentencing that the defendant should be sentenced to life imprisonment without the possibility of parole and that the crime defendant agreed to plead guilty to was committed with the use of a firearm. *Id.* at 455, 513 S.E.2d at 682. The defendant was sentenced to life in prison without the possibility of parole. *Id.* Thus, we again found that plain error resulted from the State's violation of the plea agreement. *Id.* at 464, 513 S.E.2d at 691.

In the instant matter, both the circuit court and defense counsel took issue with the State's recommendation of confinement to the penitentiary as being contrary to the plea agreement. The plea agreement was reviewed on the record, and the State ultimately upheld its end of the bargain and did not object to home incarceration for petitioner. In short, to the extent any breach occurred, it was quickly remedied on the record, and the State's initial recommendation did not factor into the circuit court's sentencing decision. Although the circuit court denied petitioner's request for home incarceration, it did so because "the investigating officer does not recommend any kind of home confinement or alternative sentencing, the Probation Officer does not recommend any kind of alternative sentence or home confinement or probation and the Court believes that that would all be inappropriate in a case such as this."

Moreover, we conclude that "there is 'no reasonable possibility that the [alleged] violation contributed to the [sentence imposed by the court.]" *Wilson*, 237 W.Va. at 294, 787 S.E.2d at 565 (citing syl. pt. 2, in part, *State v. Frazier*, 229 W.Va. 724, 725, 735 S.E.2d 727, 728 (2012) ("Errors involving deprivation of constitutional rights will be regarded as harmless only if there is no reasonable possibility that the violation contributed to the conviction."). The circuit court was well aware of the terms of the parties' agreement and corrected the State's initial recommendation of incarceration. Plus, the circuit court disregarded the State's sentencing recommendation, at least in part, by ordering certain of petitioner's sentences to run consecutively when the State recommended concurrent sentences. Finally, the basis of the circuit court's denial of petitioner's request for home incarceration was the findings in the presentence investigation report.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** September 5, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker