# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 21-0265** (Berkeley County CC-02-2020-F-144)

**Nicholas Shackleford,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Nicholas Shackleford, by counsel S. Andrew Arnold, appeals the Circuit Court of Berkeley County's March 8, 2021, order denying his Rule 35(b) motion requesting a reduction of his sentence. Respondent the State of West Virginia ("the State"), by counsel Patrick Morrisey and Andrea R. Nease Proper, filed its response in support of the circuit court's order. On appeal, petitioner alleges that the circuit court erred by considering the State's response opposing his Rule 35(b) motion and in failing to adequately consider sentencing petitioner under the youthful offender statute.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On December 31, 2019, petitioner, Kristen Barron and other individuals gathered and consumed alcoholic beverages. Petitioner, who was eighteen years old at the time, then drove his motor vehicle while intoxicated with Ms. Barron in the passenger seat. Petitioner crashed the vehicle, ejecting him and Ms. Barron. Ms. Barron was killed upon impact.

In June of 2020, petitioner was indicted on one count of felony driving under the influence ("DUI") resulting in death. Prior to trial, petitioner entered into a plea agreement whereby he agreed to plead guilty to one count of DUI resulting in death in exchange for the State's agreement to "make no sentencing recommendation at sentencing (except to the extent restitution is requested)." Further, the State agreed "not to make any argument or recommendation to the Court at sentencing" but did reserve the right to respond to questions, provide a factual foundation for the plea, and respond to any false or inaccurate statements. Specifically, the agreement allowed

1

the State to "[r]respond to questions raised by the [c]ourt." The plea agreement was signed by the parties in October of 2020, and petitioner pled guilty at a hearing later that month.

In November of 2020, petitioner's pre-sentence investigation report ("PSI") was complete and entered into the record. The report detailed that petitioner had a prior juvenile conviction of reckless driving wherein he pled no contest. Petitioner also admitted to prior alcohol, tobacco, and marijuana usage, beginning when he was sixteen and seventeen years old. At the time of the report, petitioner was working as an electrician. Petitioner reported anxiety and depression after the crash and indicated that he sought treatment but acknowledged he only attended four treatment sessions. According to the report, petitioner was also required to report to the Day Report Center since March of 2020 but between then and the issuance of the report in November of 2020, petitioner had missed thirteen of the required classes and six drug screens. Further, petitioner tested positive for marijuana seven times between March 10, 2020, and April 2, 2020. The report also recounted several victim impact statements requesting that petitioner serve significant prison time and not be sentenced as a youthful offender. The victim's mother asserted that petitioner had a history of reckless behavior, and that even after the crash the behavior continued with petitioner posting photographs and videos of him partying with friends. Ms. Barron's mother stated that petitioner had shown no remorse and had not apologized to her family. Ms. Barron's father requested that the circuit court impose the maximum fifteen years of incarceration penalty upon petitioner. Ms. Barron's brother indicated that petitioner had crashed several vehicles in the past and had been expelled from school for alcohol consumption. He similarly requested that the circuit court impose a harsh punishment upon petitioner.

Petitioner filed a sentencing statement that same month and noted his employment potential as an electrician and stated remorse for his actions. Petitioner requested home incarceration or sentencing to the center for housing youthful male offenders. Petitioner also submitted letters from his mother, friends, and other relatives urging that petitioner not be sentenced to incarceration and repeatedly noted that petitioner made a "mistake." In one letter, petitioner's aunt admitted that petitioner had been making risky decisions regarding partying and driving prior to the crash. However, one of petitioner's friends asserted that petitioner had "turned his life around" subsequent to the crash.

At the sentencing hearing, the circuit court accepted the PSI report without objection. Ms. Barron's mother, father, and sister provided impact statements at the hearing, all requesting a heavy sentence due to Ms. Barron's death. Ms. Barron's mother and father recounted petitioner's prior issues with excessive speeding while driving and prior crash incidents. Petitioner's counsel argued for leniency in sentencing, and petitioner read a letter to Ms. Barron's family expressing remorse for his actions. Prior to effectuating its sentence, the court provided a comprehensive statement regarding the seriousness of the offense, the need for punishment, and petitioner's lack of prior criminal history. The court also noted that deterrence was a factor in the case and stated that petitioner may not be deterred from future similar behaviors if he was allowed to continue living at home. The court balanced statements regarding petitioner's character against his previous risky behaviors and noted that petitioner had failed to report to probation on at least two occasions since the crash. The court further noted that petitioner had missed thirteen total classes at the Day Report Center. The court found that petitioner's failure to fully engage in his recovery weighed heavily against the idea that he was remorseful. As such, the court found that sentencing petitioner

to the Anthony Center was not appropriate and sentenced him to three to fifteen years of incarceration.[1]

In February of 2021, petitioner filed a "Motion for Reconsideration of Sentence Pursuant [to] Rule 35(b)." Petitioner requested probation or sentencing to the Anthony Center, noting he had been incarcerated for four months at the time. On March 5, 2021, the circuit court ordered the State to respond to petitioner's motion within fifteen days of its order. The State responded in opposition to petitioner's motion for reconsideration the same day as the court's order, stating that there had been "no material change in circumstances, nor compelling reason for the [c]ourt to revisit its ruling." Petitioner replied to the State's response on March 8, 2021, pointing to a provision in the plea agreement that the State stand silent at sentencing, and asked the court to disregard the State's response. Petitioner further argued that, after serving several months in jail, he had reflected on his conduct and wished to "remind the [c]ourt of his pledge to devote his life's work to honor Ms. Barron." Petitioner also stated that he sought to address statements by Ms. Barron's family, but he did not indicate what statements he sought to address.

On the same date as petitioner's reply—March 8, 2021—the State retracted its opposition to petitioner's motion. Finally, on the same day, the circuit court denied petitioner's motion for reconsideration, stating that "[petitioner]'s request of the [c]ourt to reduce the currently imposed Division of Corrections sentence would depreciate the gravity of the crime committed as well as the impact on the victim's family." Further, the court noted it considered petitioner's arguments in favor of alternative sentencing at the sentencing hearing and found that petitioner had "provided no change in circumstances that would warrant reconsideration or a hearing thereupon." Petitioner appeals the March 8, 2021, order denying his Rule 35(b) motion requesting a reduction of his sentence.

This Court has held that

> "[i]n reviewing the findings of fact and conclusions of law of a circuit court concerning an order on a motion made under Rule 35 of the West Virginia Rules of Criminal Procedure, we apply a three-pronged standard of review. We review the decision on the Rule 35 motion under an abuse of discretion standard; the underlying facts are reviewed under a clearly erroneous standard; and questions of law and interpretations of statutes and rules are subject to a *de novo* review." Syl. Pt. 1, *State v. Head,* 198 W.Va. 298, 480 S.E.2d 507 (1996).

Syl. Pt. 1, *State v. Marcum*, 238 W. Va. 26, 792 S.E.2d 37 (2016). A motion for reduction of sentence under Rule 35(b) is "essentially a plea for leniency from a presumptively valid conviction." *Head*, 198 W. Va. at 306, 480 S.E.2d at 515 (Cleckley, J., concurring).

---

[1]"Anthony Center" refers to the Anthony Correctional Center, which is a potential alternative sentence for young adult offenders between the ages of eighteen and twenty-five. Offenders are committed for a term of six months to two years and are released on probation if successful in completing the program's requirements. *See* W. Va. Code §§ 25-4-1 to 25-4-12.

On appeal, petitioner contends that the circuit court's order denying his Rule 35 motion should be reversed and the matter remanded for further consideration by a different judge. Petitioner argues that his motion should be revisited because the State breached the terms of the plea agreement with him when it filed its opposition to his Rule 35 motion. Petitioner acknowledges that the State later retracted its opposition to his motion in a subsequent filing but contends it was filed on the same day—indeed, mere minutes—before the circuit court entered an order denying the Rule 35 motion. As such, petitioner contends that the court erred by taking the State's opposition to his motion in consideration when ruling on the motion. We find no merit to petitioner's argument.

> "Cases involving plea agreements allegedly breached by either the prosecution or the circuit court present two separate issues for appellate consideration: one factual and the other legal. First, the factual findings that undergird a circuit court's ultimate determination are reviewed only for clear error. These are the factual questions as to what the terms of the agreement were and what was the conduct of the defendant, prosecution, and the circuit court. If disputed, the factual questions are to be resolved initially by the circuit court, and these factual determinations are reviewed under the clearly erroneous standard. Second, in contrast, the circuit court's articulation and application of legal principles is scrutinized under a less deferential standard. It is a legal question whether specific conduct complained about breached the plea agreement. Therefore, whether the disputed conduct constitutes a breach is a question of law that is reviewed *de novo*." Syllabus Point 1, *State ex rel. Brewer v. Starcher*, 195 W.Va. 185, 465 S.E.2d 185 (1995).

Syl. Pt. 1, *State v. Martin*, 225 W. Va. 408, 693 S.E.2d 482 (2010).

Further, we have long recognized that "[a]s a matter of criminal jurisprudence, a plea agreement is subject to principles of contract law insofar as its application insures a defendant receives that to which he is reasonably entitled." *State ex rel. Brewer v. Starcher*, 195 W. Va. 185, 192, 465 S.E.2d 185, 192 (1995). Regarding the interpretation of plea agreements, we have previously noted that

> [a]ny ambiguities in a plea agreement will be construed against the State. Syl. pt. 3, in part, *State ex rel. Thompson v. Pomponio*, 233 W.Va. 212, 757 S.E.2d 636 (2014) (rejecting State's argument that language of plea agreement was ambiguous, and holding that any ambiguity must be construed against State). Nevertheless, a plea agreement should be read reasonably, without resort to strained or hyper-technical interpretation. *See United States v. Larson*, 78 Fed.Appx. 650, 655-56 (10th Cir. 2003); *United States v. Little*, 14 Fed.Appx. 200, 204 (4th Cir. 2001).

*State v. Wilson*, 237 W. Va. 288, 293, 787 S.E.2d 559, 564 (2016). Moreover,

> "[i]t is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them." Syllabus point 3,

*Cotiga Development Co. v. United Fuel Gas Co.*, 147 W.Va. 484, 128 S.E.2d 626 (1962).

*State v. Stewart*, No. 18-0006, 2019 WL 181479, at \*5 (W. Va. Jan. 14, 2019)(memorandum decision) (citation omitted).

With these legal principles in mind, we find no error in the State's compliance with the plea agreement. Although the State did agree to "not make any argument or recommendation to the Court at sentencing," the State did not violate the agreement by responding to the Rule 35(b) motion upon request by the circuit court. Indeed, this Court has long held that "[a] 'sentence' is a judgment of the court, formally declaring to the accused the legal consequences of the guilt for which he has been convicted, or has confessed." Syl., *Cohn v. Ketchum*, 123 W. Va. 534, 17 S.E.2d 43 (1941). Here, petitioner's sentence was announced by the circuit court at the sentencing hearing and memorialized in the sentencing order in November of 2020. As such, the State fulfilled its obligation under the plea agreement when it stood silent during the sentencing hearing.

Further, the plea agreement noted that the State "reserves the right to," among other things, "[r]espond to questions raised by the [c]ourt." After petitioner filed his Rule 35(b) motion, the court specifically directed the State to "file a response" as well as submit a proposed order along with the response. Thus, the State filed its response as requested by the court. This language is straightforward and unambiguous, and we will not resort to the interpretation petitioner asks this Court to apply: that the State was not allowed to oppose his Rule 35(b) motion or otherwise respond to the circuit court's request for a response. The plea agreement expressed that the State would stand silent at sentencing, and that is what it did. That the State later opposed his post-conviction Rule 35(b) motion does not prove that the State breached the plea agreement. It is also clear from a plain reading that Rule 35 presupposes that a sentence was already imposed. "At the time a Rule 35(b) motion is filed, a final sentence order has been entered." *Head*, 198 W. Va. at 305, 480 S.E.2d at 514 (Cleckley, J., concurring). Further, "[a] Rule 35(b) hearing is not, nor was it ever intended to be, a sentencing hearing." *Id*. at 306, 480 S.E.2d at 515 (Cleckley, J., concurring).

Petitioner also cites to *United States v. Garnett*, 691 F. Supp. 969 (N.D. W. Va. 1988), in support of his argument that the State broke the plea agreement by opposing his Rule 35(b) motion. However, the plea agreement in *Garnett* is distinguishable from the plea agreement at issue here. In *Garnett*, the plea agreement stated: "[t]he Defendant understands that the matter of sentencing is left in the sole discretion of the sentencing judge, and the United States will take no position with respect to the final disposition." The *Garnett* court noted that "[t]he question before the Court is whether a promise to 'take no position with respect to the final disposition' allows the Government to oppose a Rule 35 motion to reduce sentence." *Id*. at 971-72. The court found the phrase—"take no position with respect to the final disposition"—to be dispositive in interpreting the plea agreement. The court noted that the Government went "one step further" than usual in a plea agreement by its agreement to this clause. However, the plea agreement in this case specifically limited the State to stand silent at sentencing and nothing more. Therefore, the facts underlying the *Garnett* decision are wholly distinguishable from the facts of the case at bar.

In his second assignment of error, petitioner argues that the circuit court erred in denying his Rule 35 motion for failure to adequately consider sentencing under the Youthful Offenders Act. Petitioner contends that he was just eighteen years old at the time of his offense and that serving several months of incarceration has provided him "the opportunity to further reflect on his conduct." Petitioner acknowledges that the "decision whether to invoke . . . the Youthful Offender[s] Act is within the sole discretion of the sentencing judge." Nevertheless, petitioner avers that the circuit court erred by ruling prior to his opportunity to review the sentencing transcript "in order to address unsubstantiated allegations made in the sentencing hearing by the victim's family." This Court has stated as follows:

> Just as a trial court's decision to grant or deny probation is subject to the discretion of the sentencing tribunal, so too is the decision whether to sentence an individual pursuant to the Youthful Offenders Act. The determinative language of West Virginia Code § 25-4-6 is stated indisputably in discretionary terms: "[T]he judge of any court . . . **may** suspend the imposition of sentence . . . and commit the young adult to the custody of the West Virginia commissioner of corrections to be assigned to a center." *Id.* (emphasis supplied). Since the dispositive statutory term is "may," there can be no question that the decision whether to invoke the provisions of the Youthful Offenders Act is within the sole discretion of the sentencing judge. *See State v. Allen*, 208 W.Va. 144, [157], 539 S.E.2d 87, [100] (1999) (recognizing that "[c]lassification of an individual as a youthful offender rests within the sound discretion of the circuit court"); accord *State v. Richards*, 206 W.Va. 573, 575, 526 S.E.2d 539, 541 (1999) (stating that Youthful Offenders Act "grants discretionary authority to the circuit courts to suspend imposition of sentence, and place a qualifying defendant in a program of rehabilitation at a youthful-offender center") (citation omitted).

*State v. Shaw*, 208 W. Va. 426, 430, 541 S.E.2d 21, 25 (2000). Moreover, "'[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review.' Syllabus Point 4, *State v. Goodnight*, 169 W.Va. 366, 287 S.E.2d 504 (1982)." Syl. Pt. 6, *State v. Slater,* 222 W.Va. 499, 665 S.E.2d 674 (2008). Upon review of the record, the circuit court sentenced petitioner within the statutory limit for DUI resulting in death pursuant to West Virginia Code § 17C-5-2(b) and the sentences were not based on an impermissible factor. Furthermore, the plea agreement did not require youthful offender treatment sought by petitioner, such as that offered at the Anthony Center, and the circuit court was within its discretion to decline to sentence him pursuant to the Youthful Offenders Act. This Court finds no error in the circuit court's denial of petitioner's Rule 35(b) motion because petitioner was properly sentenced pursuant to the statute.

For the foregoing reasons, we find no error in the circuit court's March 8, 2021, order.

Affirmed.

**ISSUED:** August 30, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn