**STATE OF WEST VIRGINIA**

**FILED**
**June 15, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**In re: S.J. and L.J.**
**No. 19-0702** (Mingo County 18-JA-67 and 18-JA-69)

## MEMORANDUM DECISION

Petitioner, J.J., appeals the July 10, 2019 dispositional order of the Circuit Court of Mingo County that terminated his parental rights.[1] Respondent, West Virginia Department of Health and Human Resources ("DHHR"),[2] and Guardian Ad Litem, Cullen C. Younger, Esq., filed response briefs in support of the circuit court's termination.

Having thoroughly reviewed the appendix record, the parties' briefs and oral arguments, the applicable law, and all other matters before the Court, we conclude that plain error permeated this case. The circuit court attempted to adjudicate Petitioner as an abusing and neglectful parent before he was served with notice of the action and later terminated Petitioner's parental rights without concluding his adjudicatory hearing. Accordingly, we vacate the circuit court's dispositional order and remand Petitioner's case for a full adjudicatory hearing and appropriate subsequent proceedings. Because this case presents no new or substantial question of law, its proper disposition is by memorandum decision as contemplated by Rule 21(d) of the West Virginia Rules of Appellate Procedure.

Petitioner is the father of two small children, S.J. and L.J., who were found locked in a camper at the home of an alleged drug dealer on July 15, 2018. The children had spent two nights in the camper, without running water, and were in danger when they were rescued by a relative.

---

[1] Petitioner is represented by Susan J. Van Zant, Esq., in this appeal. Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R.*, 230 W. Va. 731, 742 S.E.2d 419 (2013).

[2] DHHR is represented by Patrick Morrisey, Attorney General, and Mindy M. Parsley, Assistant Attorney General, in this appeal.

A different relative reported these issues to Child Protective Services ("CPS"), and on July 18, 2018, DHHR filed a petition for immediate custody of the children.[3] The petition requested custody of the children "due to the mother taking the children . . . to an alleged drug dealer's home and [leaving] them, where they were later locked in a camper[,]" and due to Petitioner being "currently incarcerated for a probation violation that began from drug charges." The circuit court granted the petition on July 18, 2018, and appointed counsel for Petitioner.

The circuit court held a preliminary hearing on July 24, 2018. Petitioner did not appear for the hearing and was not served with notice of the petition or the hearing. The following exchange occurred during the hearing regarding service of process:

> [PETITIONER'S ATTORNEY]: Your honor, it's my understanding that [Petitioner] is incarcerated in Pike County, Kentucky.
>
> . . . .
>
> THE COURT: Has he been served?
>
> [PROSECUTOR]: We'll need to publish.
>
> THE COURT: All right[.] . . .
>
> Any other preliminary matters?
>
> [PROSECUTOR]: Your Honor, as far as service he is incarcerated, but we've served his attorney and she is present. I think we decided the other day that was the equivalent of appointing . . . a guardian ad litem.
>
> THE COURT: They call it warning order attorneys in Kentucky.
>
> Is that correct, [Petitioner's attorney]? Do you have service for your client?
>
> [PETITIONER'S ATTORNEY]: I do, Your Honor.
>
> THE COURT: All right. Call your [i.e., DHHR's] first witness.

---

[3] The petition named a third child, P.M., as an infant respondent, and P.M.'s non-offending father, J.W., joined DHHR as a co-petitioner. Neither P.M. nor his father, J.W., are subjects of this appeal.

2

DHHR's first and only witness at the preliminary hearing was the investigating CPS worker, who described how the children came to be found and testified that the mother admitted to taking Suboxone without a prescription, to leaving the children with someone else, and to having "no idea what happened to her kids." The CPS worker presented little testimony about Petitioner except to state that he was incarcerated and that—to her knowledge—he had done nothing to protect the children. On cross-examination by Petitioner's counsel, the worker admitted that Petitioner could not control the mother while he was in jail. After further cross-examination on other matters, DHHR rested, and the other parties offered no further witnesses. On this evidence, the circuit court found "probable cause to believe the respondents have neglected and failed to protect the children from neglect" and, further, that Petitioner "failed to take any steps to protect his children." Petitioner's attorney raised no objection to the circuit court's findings.

On July 26, 2018, Petitioner's attorney filed a response to the petition and a request for an improvement period.[4] The response was unverified, however, and was not otherwise signed by Petitioner.[5]

The circuit court convened an adjudicatory hearing on August 29, 2018. Petitioner did not appear for the hearing. Once again, Petitioner was not served with notice of the petition or the hearing. DHHR moved the court "to take judicial notice of all prior testimony, findings of fact, and conclusions of law," and the circuit court agreed. None of the parties presented any witnesses or any further evidence, and the court announced its decision, finding "that the children . . . have been abused and neglected, as defined by the Code" and that "[t]he respondents have neglected and failed to protect these children from neglect."

At this juncture, the mother's attorney said that there was no indication that her client had been served. Petitioner's attorney observed the same: "I'm in the same situation. I was trying to see if he'd been served and I'm not sure he has." This colloquy followed:

> [PROSECUTOR]: Your Honor, I believe [Petitioner] had been, but I'm not showing anything regarding [the mother]. Do we need to publish on her?

---

[4] Although Petitioner's response was not originally included in the appendix record submitted by the parties, this Court obtained a copy from the circuit court clerk. *See* W. Va. R. App. P. 6(a) [2010] ("The record consists of the papers and exhibits filed in the proceedings in the lower tribunal, the official transcript or recording of proceedings, if any, and the docket entries of the lower tribunal.").

[5] *Cf.* W. Va. R. P. Child Ab. & Negl. P. 17(b) [2016] ("Each respondent shall file and serve a *verified* answer[.]" (emphasis added)).

THE COURT:  Yes.  Do we have to go backwards or can we go on to disposition?

[PROSECUTOR]:  I think we'll have to hold the adjudicatory in abeyance.

[MOTHER'S ATTORNEY]:  My notes from the preliminary hearing indicate that my client was present, but I don't know if she had been served.

[PROSECUTOR]:  That's correct, Your Honor.

[MOTHER'S ATTORNEY]:  . . . It[6] says that [Petitioner's attorney], as counsel for [Petitioner], accepted service.

[PETITIONER'S ATTORNEY]:  I would never do that.

THE COURT:  All right.  Let's publish it and come back on October 10th.

[PROSECUTOR]:  Your Honor, we can go forward on the adjudicatory.  She[7] was here.

THE COURT:  I know, but we're talking about [Petitioner] now.  Right?

. . . .

[PROSECUTOR]:  And I believe you held that . . . counsel being served was sufficient.

THE COURT:  It was sufficient?

[PETITIONER'S ATTORNEY]:  I would not have voluntarily accepted service.

---

[6] From context, we assume that "it" refers to counsel's notes from the preliminary hearing.

[7] From context, we assume that "she" refers to the mother.

[PROSECUTOR]: It would be the same as having [a] guardian ad litem appointed for him.

(Off-the-record discussion)

THE COURT: All right. Serve it. Let's come back on the 10th [of October] and finish the adjudication. That will be in abeyance. We'll get on the same track.

(Footnotes added.)

On August 31, 2018, the circuit clerk entered an order of publication as notice to Petitioner and the children's unknown father (if any),[8] and the prosecutor filed a copy of a letter to a newspaper requesting publication.[9] No proof of publication appears on the docket sheet, verifying that the newspaper published the order.[10]

When the parties returned to court on October 10, 2018, the circuit court observed that the case was set for adjudication. The prosecutor, however, mistakenly believed that the case was set for disposition. Because the guardian ad litem was absent, the court continued the case to November and set the case for disposition.

On October 30, 2018, Petitioner filed a verified response to the petition.[11] The response denied all allegations of abuse and neglect and moved that the case be dismissed or, in the alternative, that Petitioner be granted a pre-adjudicatory improvement period.

---

[8] DHHR served "Unknown Father" because Petitioner's name does not appear on either child's birth certificate, though no one denies that Petitioner is the children's biological father.

[9] Although neither the publication order nor the prosecutor's letter was included in the appendix record submitted by the parties, this Court obtained copies from the circuit court clerk. *See supra* note 4.

[10] *Cf.* W. Va. R. Civ. P. 4(i) [2007] ("The person serving the process or order or publishing a notice or order shall make proof of service of publication to the court promptly and in any event within the time during which the person served must respond to the process, notice, or order.").

[11] Although Petitioner's second response to the petition was not included as part of the appendix record submitted by the parties, this Court obtained a copy from the circuit court clerk. *See supra* note 4.

On November 13, 2018, the circuit court entered a written order noting that the adjudicatory hearing had commenced but was "held in abeyance for further investigation and service." Yet, when the circuit court convened for a hearing the very next day, both the court and the parties were seemingly unaware of the posture of the case. When the court asked, "What are we doing today?" Petitioner's counsel replied that "this is *dispositional*." (Emphasis added.) None of the other attorneys present at the hearing corrected her.

The November 14, 2018 hearing was Petitioner's first personal appearance in the matter, and his counsel moved for an improvement period and a continuance, noting that Petitioner had been in jail[12] "and could not participate." The circuit court granted Petitioner's motion, in part, and continued the case to January 2019. The record reflects that Petitioner's request for an improvement period was held in abeyance at DHHR's request, but the circuit court never ruled on it.

The attorneys returned to court on January 16, 2019. Both parents were believed to be in jail, so the hearing was continued.

The court eventually convened for a dispositional hearing on April 18, 2019. Petitioner was present in person. DHHR moved the court "to take judicial notice of all prior testimony, findings of fact, conclusions of law," and moved to submit the matter on the case plan and the guardian ad litem report. None of the parties presented any further witnesses or evidence. On this basis, the circuit court terminated Petitioner's (and the mother's) parental rights. Petitioner's attorney raised no objection to the circuit court's decision, nor to the manner in which it was reached. Petitioner's attorney merely advised that Petitioner wished to appeal.

Nearly three months later, on July 10, 2019, the circuit court entered a dispositional order, declaring that Petitioner's (and the mother's) parental rights are terminated. Petitioner appeals the circuit court's dispositional order.

Petitioner challenges a dispositional order entered in an abuse and neglect case. In such cases, we apply the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination

---

[12] The attorneys' remarks reveal that Petitioner was not actually incarcerated when the children were locked in the camper; he was working out of state. He was, however, subsequently incarcerated.

6

based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syllabus Point 1, *In Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re A.P.-1*, 241 W. Va. 688, 827 S.E.2d 830 (2019). With this standard of review in mind, we will consider Petitioner's assignment of error.

Petitioner raises a two-part assignment of error. He contends, first, that the circuit court should not have terminated his parental rights and, second, that the circuit court should have granted visitation.[13] From Petitioner's arguments, however, it appears that he wishes to challenge the entire breadth of the proceedings below, from the sufficiency of DHHR's petition to the termination of his rights.[14]

Petitioner's brief makes various assertions, but he fails to support them with appropriate citations to the law or the appendix record. W. Va. R. App. P 10(c)(7) [2016]. The Rules of Appellate Procedure expressly authorize us to "disregard errors that are not adequately supported by specific references to the record on appeal[,]" W. Va. R. App. P. 10(c)(7), and an "issue . . . not raised below . . . is therefore not properly before this

---

[13] It is not clear from the petition whether Petitioner asserts that the circuit court should have ordered visitation while the case was pending or visitation after termination.

[14] Petitioner's skeletal "Argument" section asserts, among other things, (a) that DHHR's petition "failed to make any allegations against him that would lead to the termination of parental rights"; (b) that DHHR failed to show that there was "no reasonable likelihood that . . . [Petitioner could] substantially correct the condition of abuse and neglect in the near future"; (c) that DHHR "failed to present credible evidence sufficient for the circuit court to" find "that the children were abused by clear and convincing evidence"; (d) that Petitioner "should have . . . been granted services and an Improvement Period once he was released from incarceration"; (e) that "[i]t is a violation of Due Process and his constitutional rights to be held accountable for allegations not plead [sic] in the Petition"; and (f) that "[t]ermination of [Petitioner]'s parental rights was contrary to the best interests of the children."

Court[,]" *State ex rel. Lewis v. Hall*, 241 W. Va. 355, 359, 825 S.E.2d 115, 119 (2019). Nevertheless, when justice requires this Court has the authority to "notice plain error." Syl. Pt. 1, in part, *State v. Myers,* 204 W.Va. 449, 513 S.E.2d 676 (1998). Plain error is error that is plain, that affects substantial rights, and that seriously affects the fairness, integrity, or public reputation of the judicial proceedings. Syl. Pt. 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).[15] We find that Petitioner's case is rife with plain error.

The West Virginia Code authorizes DHHR or any "reputable person [who] believes that a child is neglected or abused" to file a petition in circuit court and directs the circuit court to "set a time and place for a hearing[.]" W. Va. Code § 49-4-601(a) and (c) (2015).[16] The statute further directs that "[t]he petition and notice of the hearing *shall be served* upon *both parents . . . ,* giving *. . . at least five days' actual notice* of a preliminary hearing and *at least ten days' notice* of any other hearing." W. Va. Code § 49-4-601(e)(1) (emphasis added). When parents cannot be served in person in West Virginia, the statute provides for service by certified mail or, failing that, service by publication. W. Va. Code § 49-4-601(e)(3) and (4).

---

[15] As this Court noted in *In re Timber M*., 231 W.Va. 44, 60, 743 S.E.2d 352, 368 (2013):

> [T]his Court has previously addressed matters not raised in the appeal of cases involving the welfare of children. *See In re Jonathan Michael D*., 194 W.Va. 20, 27, 459 S.E.2d 131, 138 (1995) ("On the issue of the improvement period, we *sua sponte* address an issue of particular concern to this Court."); *In re Jamie Nicole H*., 205 W.Va. 176, 183, 517 S.E.2d 41, 48 (1999) ("While Appellant has not raised the sufficiency of the trial court's dispositional order, we address this issue *sua sponte*."). *Cf. In re K.R*., 229 W.Va. 733, 744 n. 23, 735 S.E.2d 882, 893 n. 23 (2012) ("While neither party assigned this specific ruling as error, this does not affect this Court's ability to determine it to be error: [I]t is within the authority of this Court to "sua sponte, in the interest of justice, notice plain error." *Cartwright v. McComas*, 223 W.Va. 161, 164, 672 S.E.2d 297, 300 (2008) (quoting Syl. Pt. 1, in part, *State v. Myers*, 204 W.Va. 449, 513 S.E.2d 676 (1998).")); *Ringer v. John*, 230 W.Va. 687, 742 S.E.2d 103 (2013) (Court deciding case on the basis of an issue not raised by the parties).

(Footnotes omitted.)

[16] The Legislature amended Section 601 in 2019, Acts 2019, 1st Ex. Sess., c. 28, but the amendments have no bearing on this case. The 2015 version of the statute is applicable here.

It is clear that this process was not followed in the instant case. The DHHR filed the petition on July 18, 2018. Less than a week later, on July 24, 2018, the circuit court held the preliminary hearing, and about a month later, on August 29, 2018, the circuit court attempted to hold an adjudicatory hearing, going even so far as to announce its finding that Petitioner "neglected and failed to protect" his children. Only then did the circuit court determine that Petitioner had never been served. An order directing service upon Petitioner by publication was entered two days later.[17]

Service on Petitioner was no minor detail. Without proper service, the circuit court lacked jurisdiction to adjudicate his rights. *Overfield v. Collins*, 199 W. Va. 27, 34 n.5, 483 S.E.2d 27, 34 n.5 (1996) ("Our case law is clear: a court that enters a judgment where there has been insufficient service of process is without jurisdiction to enter said judgment[.]"). Proceeding without service also violated Petitioner's due process right to "a fair decision-making process, including the right to receive written notice of the attempt to affect [his] liberty interest [in his children], the right to present evidence, and the right to obtain a decision from a neutral, detached person or tribunal." *Id.* at 34, 483 S.E.2d at 34. Although Petitioner was eventually served, it was plain error for the circuit court to begin the adjudicatory hearing and make any findings on the record prior to service being properly established.

Even more troublesome is the circuit court's failure to adjudicate Petitioner as an abusing or neglectful parent before it terminated his parental rights. "[O]ur statutes, cases, and rules instruct that a circuit court may not terminate parental rights at a § 49-4-604 disposition hearing *without first finding* that the parent abused or neglected the child in question at a § 49-4-601 adjudicatory hearing." *In re A.P.-1*, 241 W. Va. at 693, 827 S.E.2d at 835 (emphasis added). Indeed, we have held that adjudication "is a prerequisite to further continuation of the case[,]" Syl. Pt. 1, in part, *State v. T.C.*, 172 W. Va. 47, 303 S.E.2d 685 (1983), and that bypassing the adjudicatory phase is an error of constitutional dimension that undermines the circuit court's jurisdiction. *In re A.P.-1*, 241 W. Va. at 693–94, 827 S.E.2d at 835–36.[18] This adjudication-first rule is so fundamental that it defines

---

[17] When the matter was addressed at the adjudicatory hearing, Petitioner's counsel denied accepting service on Petitioner's behalf.

[18] *In re A.P.-1*, we stated that

> the primary purpose of making an initial finding of abuse or neglect is to protect the interest of all parties and *to justify the continued jurisdiction* of the court. The two-stage process supports the constitutional protections

what a dispositional hearing is: "the hearing . . . that is held *after a child has been adjudged* to be abused and/or neglected[.]" W. Va. R. P. Child Ab. & Negl. P. 3(i) [2015] (emphasis added).

"Where it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases . . . has been substantially disregarded or frustrated," we will vacate "the resulting order of disposition" and remand "the case . . . for compliance with that process[.]" Syl. Pt. 5, in part, *In re Edward B.,* 210 W.Va. 621, 558 S.E.2d 620 (2001). On the record in this case, we find that the circuit court plainly and substantially disregarded and frustrated the orderly process of adjudication and disposition established in Chapter 49, Article 4, Part VI of the West Virginia Code and our Rules of Procedure for Child Abuse and Neglect Proceedings. The circuit court never concluded the adjudicatory hearing in this matter and never entered the written adjudicatory order required by W. Va. Code § 49-4-601(i)[19] and W. Va. R. P. Child Ab. & Negl. P. 27 [2015].[20] Despite the fact that the court lacked any of the necessary testimony or evidence to adjudicate Petitioner, shockingly, the circuit court, without any objection whatsoever from his counsel, moved forward to conduct a dispositional hearing and terminate Petitioner's parental rights. While the facts surrounding the alleged abuse of the children by the mother in this case are undoubtedly horrific, and we are concerned by the evidence of Petitioner's failure to protect the children, we cannot ignore the fact that the record and the circuit court's findings with respect to Petitioner are grossly underdeveloped in this case. We are deeply concerned with the disorganized, slipshod manner in which this case was handled by both the circuit court and the parties, and the fact that this matter proceeded to disposition terminating Petitioner's parental rights in spite of these glaring procedural inadequacies. We therefore find that the

---

afforded to parents in permanent child removal cases—constitutional rights guaranteed by the Due Process Clause of the Fourteenth Amendment.

241 W. Va. at 693–94, 827 S.E.2d at 835–36 (alteration removed) (quoting *In re K.H.*, No. 18-0282, 2018 WL 6016722, at *5 (W. Va. Nov. 16, 2018) (memorandum decision)).

[19] W. Va. Code § 49-4-601(i) provides that, "[a]t the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law . . . , all of which shall be incorporated into the order of the court."

[20] W. Va. R. P. Child Ab. & Negl. P. 27 provides that, "[a]t the conclusion of the adjudicatory hearing, the court shall make findings of fact and conclusions of law" and requires the court to "enter an order of adjudication . . . within ten (10) days of the conclusion of the hearing[.]"

circuit court's errors in this respect were obvious and that they seriously affected both Petitioner's substantial rights and the fairness, integrity, and public reputation of the circuit court's proceedings. *See* Syl. Pt. 7, *Miller*, 194 W. Va. at 7, 459 S.E.2d at 118.

For all of the foregoing reasons, we vacate the circuit court's July 10, 2019 dispositional order and remand Petitioner's case for a full adjudicatory hearing and appropriate subsequent proceedings.

Vacated and Remanded.

**ISSUED:** June 15, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

Justice Margaret L. Workman not participating.

11